UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                              Case No. 18-14506-BKC-LMI

MIAMI BEVERLY, LLC                                  Chapter 11 (Lead Case)

                                                    Jointly Administered

1336 NW 60, LLC                                     Case No. 18-14509-BKC-LMI
REVEREND, LLC                                       Case No. 18-14510-BKC-LMI
13300 ALEXANDRIA DR. HOLDINGS, LLC                  Case No. 18-14511-BKC-LMI
THE HOLDINGS AT CITY, LLC                           Case No. 18-14512-BKC-LMI

      Debtors.
_____/

**DEBTORS' AMENDED[1] MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING SALE OF REAL PROPERTIES FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (B) APPROVING FORM AND MANNER OF NOTICE OF SALE AND BIDDING PROCEDURES; (C) APPROVING THE PURCHASE AND SALE CONTRACT; (D) APPROVING PAYMENT OF COMMISSION TO BUYER'S BROKER; AND (E) SCHEDULING A FINAL SALE HEARING**

      Debtors, Miami Beverly LLC, 1336 NW 60 LLC, Reverend  LLC, 13300 Alexandria Dr Holdings LLC, and The Holdings At City, LLC (the "Debtors"), by counsel, request the Court enter an order: (a) authorizing the sale of certain real properties free and clear of all liens, claims, and encumbrances; (b) approving the form and manner of notice of the sale and bidding procedures; (c) approving the attached purchase and sale contract; (d) approving payment of commission to the buyer's broker; and (e) scheduling a final sale hearing, pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 6004(a) (the "Amended Motion to Approve").  In support of the Amended Motion to Approve, Debtors state as follows:

## Jurisdiction

      1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

---

[1] For ease of reference, this Amended Motion reflects a new Contract, to a different purchaser, for the increased Purchase Price of $11,000,000 (from $8,500,000), which is a cash transaction (rather than owner-financed).

This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding and this motion is proper in this district pursuant to 28 U.S.C. § 1409.  The statutory bases for the relief sought herein are 11 U.S.C. §§ 105 and 363.

**Introduction**

2.     On April 17, 2018, the Debtors commenced these jointly administered cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").  The Debtors are operating their business(es) and managing their affairs as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.     To date, no trustee, examiner or creditors' committee has been appointed in these cases.

4.     The Debtors own the following real properties (collectively, the "Properties"):

| Name of Debtor/Owner | Property Address | Property Folio Number |
|---|---|---|
| Miami Beverly, LLC | 1250 NW 62 St, Miami, FL 33147-8175 | 01-3114-043-0290 |
| Miami Beverly, LLC | 1231 NW 62 St, Miami, FL 33147-8175 | 01-3114-043-0291 |
| Miami Beverly, LLC | 6040 NW 12 Ave, Miami, FL 33147-8175 | 01-3114-043-0540 |
| 1336 NW 60, LLC | 1335 NW 60 St, Miami, FL 33142-8277 | 01-3114-043-0790 |
| 1336 NW 60, LLC | 1341 NW 60 St, Miami, FL 33142-8277 | 01-3114-043-0800 |
| Reverend, LLC | 6820 NW 1 St, Miami, FL 33147-7475 | 01-3115-005-1240 |
| 13300 Alexandria Dr. Holdings, LLC | 1730 NW 1 Ct, Miami, FL 33136-1748 | 01-3125-048-1050 |
| The Holdings at City, LLC | 1710 NW 1 Ct, Miami, FL 33136-1700 | 01-3125-048-1060 |

5.     The Properties are apartment buildings, and the Debtors lease certain units in the apartment buildings to third parties (the "Leases").

6.     During a certain period of time prior to the Petition Date, the Properties were managed by Linda Leali, as court-appointed Receiver (the "Receiver") in the matter styled *City of Miami v. Miami Beverly LLC, et al.* (Case No. 2014-027781-CA-01) (the "Receivership Case").

7.      On December 24, 2015, a final judgment was entered in favor of the City of Miami, Florida, in the amount of $3,126,387.62, for alleged unpaid real estate taxes (the "City of Miami Claim").

8.      On May 17, 2018, the Receiver filed an Amended Motion Pursuant to 11 U.S.C. § 543(d)(1) to Excuse Receiver from Compliance With Turnover Requirements and to Establish Powers and Duties of Receiver *Nunc Pro Tunc* to Petition Date [ECF No. 46] (the "543 Motion").

9.      On June 14, 2018, the Court entered an Agreed Order Granting, in Part, Amended Motion Pursuant to 11 U.S.C. § 543(d)(1) to Excuse Receiver from Compliance With Turnover Requirements and to Establish Powers and Duties of Receiver *Nunc Pro Tunc* to Petition Date [ECF No. 78] (the "543 Order").

10.     The 543 Order set forth the mechanism whereby the Receiver shall remain as a custodian in possession, custody and control of the Properties.  However, pursuant to the 543 Order, the Receiver was not given authority to liquidate any of the Debtors' assets, with that authority remaining vested in the Debtors.

11.     Pursuant to the 543 Order, the Debtors were required to file a motion to approve sale and bidding procedures (the "Sale Motion") within 21 days from the date of the 543 Order.

12.     The Debtors were also required to seek a hearing on the Sale Motion on no later than 30 days' notice after the filing of the Sale Motion; seek a final hearing to be scheduled for no later than 135 days after the filing of the Sale Motion; and conduct a closing no later than 150 days after the filing of the Sale Motion.

13.     On July 9, 2018, the Court entered an order [ECF No. 92], extending the Debtors' deadline to file the Sale Motion, up to and including July 12, 2018.

14.     The Properties are not encumbered by any mortgages.  The primary secured

claim(s) against the Properties is the City of Miami Claim.  Upon information and belief, the only additional valid[2] claims against the Debtors are the claims for fees and costs of the Receiver and the Receiver's Counsel.

## The Initial Proposed Sale

15.     On July 12, 2018, the Debtors filed a Motion for Entry of an Order (A) Authorizing Sale of Real Properties Free and Clear of All Liens, Claims, and Encumbrances; (B) Approving Form and Manner of Notice of Sale and Bidding Procedures; (C) Approving the Purchase and Sale Contract; (D) Approving Payment of Commission to Buyer's Broker; and (E) Scheduling a Final Sale Hearing [ECF No. 96] (the "Initial Sale Motion").

16.     The Initial Sale Motion is scheduled for hearing on August 8, 2018 at 2:00 p.m. [ECF No. 97].

17.     The Initial Sale Motion contemplated a sale of the Properties for the purchase price of $8,500,000, with a $50,000 deposit.  Most importantly, the sale contemplated in the Initial Sale Motion was owner-financed, with $3,450,000 due at closing, with financing in the amount of $5,000,000.

18.     The sale contemplated in the Initial Sale Motion was subject to higher and better offers.

19.     As such, since the date of the Initial Sale Motion, the Debtor's representatives have communicated with numerous interested parties regarding a higher and better offer, primarily one that is not owner-financed.

20.     Around the same time, the Debtor was notified by the prospective purchaser that it was no longer able to proceed with the contemplated sale transaction.

---

[2] There have been other claims filed in these cases, and the Debtors contest the validity of same. However, the Purchase Price is sufficient to pay any undisputed and disputed (if ultimately allowed) claims in full.

### The Proposed Sale

21.    Thereafter, on August 6, 2018, the Debtors received an offer to purchase the Properties (in bulk) from The Next Corporation LLC (the "Purchaser"), in the amount of $11,000,000.  The contemplated transaction is an arms-length transaction, and neither the Purchaser, nor any of its member(s), are insiders of any of the Debtors.

22.    This is the highest and best offer that the Debtors have received, and in the Debtors' principals' experience in buying and selling real properties, the offer is well in line with current market prices.

23.    As such, the Debtors and the Purchaser have agreed to the terms contained in the "Commercial Contract" (along with addendums) attached hereto as Exhibit "A" (the "Contract"), the primary material terms of which are as follows:

  a. **Purchase Price**: $11,000,000 (the "Purchase Price")[3].

  b. **Terms**: As-is, where-is, and free and clear of all liens, claims and encumbrances.

  c. **Closing Date**: 20 days following entry of an order granting this Amended Motion to Approve.

  d. **Commission**: 2% commission (the "Commission"), payable to the Purchaser's broker, Phoenix Realtors (the "Real Estate Broker").  The Debtors did not use a broker for this transaction.

  e. **Deposit:** $1,000,000[4].

  f. **Cash at Closing:** $10,000,000.

  g. **Financing:** None

  h. **Subject to Bankruptcy Court approval**; and

  i. **Subject to higher and better offers**.

---

[3] The Addendum to Contract apportions the Purchase Price amongst the various Properties.

[4] The deposit is due within 10 days after the Effective Date of the Contract.  However, the Debtors anticipate receiving the deposit prior to the hearing on this Amended Motion.

### *Relief Requested*

24.     The Debtors request that the Court approve the sale of the Properties to the Purchaser, pursuant to 11 U.S.C. § 363(f), free and clear of any and all liens, claims and encumbrances, upon the terms set forth above.  The Debtors also request that the Court authorize the Debtors to enter into the Contract and approve the payment of the Commission to the Real Estate Broker.

25.     11 U.S.C. § 363(b) provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

26.     Additionally, 11 U.S.C. § 363(f) permits the Debtors to "...sell property under subsection (b) … of this section free and clear of any interest in such property of an entity other than the estate, only if –

    (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
    (2) such entity consents;
    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4) such interest is in bona fide dispute; or
    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest".

27.     With regard to the City of Miami Claim, the sale of the Properties is greater than the aggregate value of all liens on such Property(ies).

28.     Furthermore, it must be noted that the Purchase Price will be more than sufficient to pay any and all allowed claims against the Debtors.

29.     Therefore, 11 U.S.C. § 363(f) is satisfied.

30.     For all of the above reasons, the Court should authorize the sale of the Properties, free and clear of any and all liens, claims and encumbrances.

31.     Furthermore, the Debtors request that at closing, the Purchaser is deemed to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m), provided that the Purchaser has complied with all requirements of the Contract.

32.     If there is a conflict between the terms of this Motion and the terms of the Contract, then the terms of the Contract shall control.

33.     The Debtors, exercising their business judgment, believe that the sale of the Properties to the Purchaser is in the best interest of the bankruptcy estate.

34.     The Debtors request that the Court provide the Debtors with the authority to close the sale, disburse the sales proceeds and execute any and all documents necessary to consummate the closing.

35.     In addition, the Debtors request that the Court waive the stay period under Fed. R. Bank. P. 6004(h), so that the parties can comply with the scheduled closing date.

36.     The Debtors will seek the assumption and assignment of the various apartment leases by separate motion, if appropriate, once each of the leases are identified.

### Proposed Bid Procedures

37.     The contemplated sale is subject to higher and better offers.  Therefore, the Debtors propose the following bidding and sale procedures (the "Bidding and Sale Procedures") for the sale of the Properties:

a.     Bids.  All bids must (i) be in writing and identical in form to the Contract, except for the identity of the purchaser and the amount of the purchase price (which shall be higher and better than the Purchase Price contemplated by the Contract), or as otherwise determined by the Debtors in their reasonable discretion; and (ii) have no material contingencies or conditions precedent other than those set forth in the Contract.

b.     Bid Deadline.  All competing bids shall be submitted in writing to the Debtors, together with an Initial Deposit in the amount of $1,000,000 on or before three business days before the final sale hearing (the "Bid Deadline").

c.     Competing Bids.  In the event the Debtors receive any competing bids that conform to the requirements set forth above, then an auction shall be conducted by the

Debtors at the Bankruptcy Court at the final sale hearing, which shall be set for such date and time as is scheduled by the Court (the "Final Sale Hearing").

      d.    <u>Backup Bidder</u>.  The Debtors may designate a backup bidder, in case there are competing offers for the Properties.  If the Purchaser (or the Winning Bidder) fails to close the sale as set forth above, or otherwise breach the Contract, then the Debtors may sell the Properties to the designated backup bidder, in conformance with the terms set forth herein.

      e.    <u>Miscellaneous Provisions</u>.  The sale of the Properties shall be free and clear of liens, security interests, and other encumbrances, with any and all other liens, security interests and encumbrances, if any, to attach to the proceeds of the sale of the Properties. Furthermore, the sale of the Properties shall be "as is", "where is" and without any representations, warranties or guarantees of any kind or nature by the Debtors, either express or implied.

      38.    The Debtors reserve the right, with the Purchaser's approval, to amend or supplement this Amended Motion to Approve with any changes made to the Contract prior to the hearing thereon.

<strong><u>Notice of Amended Motion to Approve</u></strong>

      39.    Notice of this Amended Motion to Approve will be given to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) all parties to the Contract, including the Real Estate Broker; and (d) all creditors of all Debtors, as listed on the service matrices of each jointly administered bankruptcy case.

      40.    The Debtors submit that such notice constitutes good and sufficient notice of the Amended Motion to Approve and that no further notice need be given.

      WHEREFORE, the Debtors respectfully request entry of an Order granting the Amended Motion to Approve, which: (a) authorizes the sale of the Properties, free and clear

of all liens, claims, and encumbrances; (b) approves the form and manner of notice of the sale and bidding procedures; (c) approves the Contract; (d) approves payment of the Commission to the Real Estate Broker; (e) schedules a final sale hearing; and (f) grants any and all such further relief as this Court deems appropriate under the circumstances.

Dated: August 6, 2018.

LEIDERMAN SHELOMITH ALEXANDER
+ SOMODEVILLA, PLLC
Attorneys for the Debtors
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By:_____/s/_____
ZACH B. SHELOMITH
Florida Bar No. 0122548
zbs@lsaslaw.com
IDO J. ALEXANDER
Florida Bar No. 51842
ija@lsaslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on August 6, 2018 to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference), and via U.S. Mail to all parties on the attached service list.

By:_____/s/_____
Zach B. Shelomith

# Commercial Contract

 Realtors

---

1* **1. PARTIES AND PROPERTY:** <u>THE NEXT CORPORATION LLC</u> ("Buyer")

2* agrees to buy and <u>1330 Alexanria LLC, REVEREND LLC, MIAMI BEVERLY LLC, 1336 NW 60 LLC</u> ("Seller")
   <u>& THE HOLDINGS AT CITY LLC   SEE ADDENDUM</u>

3* agrees to sell the property as: Street Address: _____ SEE ADDENDUM _____

4* _____

5* Legal Description: ____ SEE ADDENDUM ____

6* _____

7* and the following Personal Property: _____

8* _____

9  (all collectively referred to as the "Property") on the terms and conditions set forth below.

10* **2. PURCHASE PRICE:**                                                   $   11,000,000.00

11* **(a)** Deposit held in escrow by <u>INCOMEREAL LLC within 10 days after effective date</u>   $   1,030,000.00

12    ("Escrow Agent") (checks are subject to actual and final collection)

13* Escrow Agent's address: _____   Phone: _____

14* **(b)** Additional deposit to be made to Escrow Agent within ___ days after Effective Date $ _____

15* **(c)** Additional deposit to be made to Escrow Agent within ____ days after Effective Date $ _____

16* **(d)** Total financing (see Paragraph 5)                                 $ _____

17* **(e)** Other _____   $ _____

18  **(f)** All deposits will be credited to the purchase price at closing. Balance to close, subject

19* to adjustments and prorations, to be paid with locally drawn cashier's or official bank   $   10,000,000

20  check(s) or wire transfer.

21  **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**

22* and **Buyer** and an executed copy delivered to all parties on or before _____, this offer will be

23  withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be 3

24  days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the**

25  **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer.**

26  Calendar days will be used when computing time periods, except time periods of 5 days or less. Time periods of 5

27  days or less will be computed without including Saturday, Sunday, or national legal holidays. Any time period ending

28  on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next business day. **Time is of the**

29  **essence in this Contract.**

30  **4. CLOSING DATE AND LOCATION:**

31* **(a) Closing Date:** This transaction will be closed on **before   10/12/18**   (Closing Date), unless specifically

32  extended by other provisions of this Contract. The Closing Date will prevail over all other time periods including, but

33  not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended on Closing

34  Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after the

35  insurance underwriting suspension is lifted.

36* Buyer (YAR) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-4   Rev 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved

37* (b) **Location:** Closing will take place in                    County, Florida. (If left blank, closing

38 will take place in the county where the property is located ) Closing may be conducted by mail or electronic means.

39 **5. THIRD PARTY FINANCING:**

40* **BUYER'S OBLIGATION:** Within _____ days (5 days if left blank) after Effective Date, **Buyer** will apply for third party

41* financing in an amount not to exceed ~~65~~ % of the purchase price or $ _____ with a fixed interest rate

42* not to exceed _____% per year with an initial variable interest rate not to exceed _____%, with points or commitment

43* or loan fees not to exceed _____% of the principal amount, for a term of _____ years, and amortized over _____

44 years, with additional terms as follows:

45*

46 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any

47* lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within _____ days (45 days if

48 left blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and

49 (iii) close the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the

50 mortgage broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately

51 upon obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and

52* reasonable diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within _____ days (3 days if left

53 blank) deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.

54 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time

55 thereafter. Unless this financing contingency has been waived, this Contract shall remain subject to the

56 satisfaction, by closing, of those conditions of Loan Approval related to the Property   **DEPOSIT(S) (for purposes**

57 **of Paragraph 5 only):** If **Buyer** has used good faith and reasonable diligence but does not obtain Loan

58 Approval by Loan Approval Date and thereafter either party elects to cancel this Contract as set forth above or the

59 lender fails or refuses to close on or before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be

60 returned to **Buyer**, whereupon both parties will be released from all further obligations under this Contract, except for

61 obligations stated herein as surviving the termination of this Contract. If neither party elects to terminate this Contract

62 as set forth above or **Buyer** fails to use good faith or reasonable diligence as set forth above, **Seller** will be entitled to

63 retain the Deposit(s) if the transaction does not close.

64* **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by☒statutory warranty

65* deed ☐ other _____ , free of liens, easements and encumbrances of record or

66 known to **Seller**, but subject to property taxes for the year of closing; covenants, restrictions and public utility

67 easements of record; existing zoning and governmental regulations; and (list any other matters to which title will be

68* subject) _____

69* _____

70 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the

71* Property as _____

72 **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent

73* and pay for the title search and closing services. **Seller** will, at (check one) ☐ **Seller's** ☒ **Buyer's** expense and

74* within ___ days ☐ after Effective Date ☐ or at least ___ days before Closing Date deliver to **Buyer** (check one)

75* ☐ (i.) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be

76 discharged by **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount

77 of the purchase price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the

78 evidence of title and **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after

79 Effective Date.

80* ☐ (ii.) an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an

81 existing firm. However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable

82 to the proposed insurer as a base for reissuance of coverage may be used. The prior policy will include copies

83 of all policy exceptions and an update in a format acceptable to **Buyer** from the policy effective date and

84 certified to **Buyer** or **Buyer's** closing agent together with copies of all documents recited in the prior policy and

85 in the update. If such an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of

86 title.

87 **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**

88 of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or

89* Buyer (YAR___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

CC-4  Rev 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved



Exhibit "A"

90°    (2) **Buyer** delivers proper written notice and **Seller** cures the defects within ___ days from receipt of the notice
91    ("Curative Period") If the defects are cured within the Curative Period, closing will occur within 10 days from receipt
92    by **Buyer** of notice of such curing. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect
93    cannot be cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have
94    10 days from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or
95    accept title subject to existing defects and close the transaction without reduction in purchase price.

96    **(c) Survey:** (check applicable provisions below)
97°      [ ] (i) **Seller** will, within ___ 10 ___ days from Effective Date, deliver to **Buyer** copies of prior surveys, plans,
98    specifications, and engineering documents, if any, and the following documents relevant to this transaction:
99°    <u>BUYER WILL PAY FOR SURVEY</u>
100    prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
101    transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
102    date this Contract is terminated
103°    [ ] **Buyer** will, at [ ] **Seller's** [X] **Buyer's** expense and within the time period allowed to deliver and examine title
104    evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
105°    encroachments on the Property or that the improvements encroach on the lands of another. [ ] **Buyer** will
106°    accept the Property with existing encroachments [ ] such encroachments will constitute a title defect to be
107    cured within the Curative Period.

108    **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

109 **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is"
110 condition, ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition.
111 **Seller** makes no warranties other than marketability of title. In the event that the condition of the Property has
112 materially changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and
113 receive a refund of any and all deposits paid, plus interest, if applicable. By accepting the Property "as is", **Buyer**
114 waives all claims against **Seller** for any defects in the Property. (Check (a) or (b))

115° [X] **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
116 condition.

117° [X] **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within the ___ 40 ___ days from Effective Date ("Due
118 Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion, for **Buyer's**
119 intended use and development of the Property as specified in Paragraph 6. During the Due Diligence Period,
120 **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which **Buyer** deems necessary
121 to determine to **Buyer's** satisfaction the Property's engineering, architectural, environmental properties; zoning and
122 zoning restrictions; flood zone designation and restrictions; subdivision regulations; soil and grade; availability of
123 access to public roads, water, and other utilities; consistency with local, state and regional growth management and
124 comprehensive land use plans; availability of permits, government approvals and licenses; compliance with
125 American with Disabilities Act; absence of asbestos, soil and ground water contamination; and other inspections
126 that **Buyer** deems appropriate to determine the suitability of the Property for **Buyer's** intended use and
127 development. **Buyer** will deliver written notice to **Seller** prior to the expiration of the Due Diligence Period of
128 **Buyer's** determination of whether or not the Property is acceptable. **Buyer's** failure to comply with this notice
129 requirement will constitute acceptance of the Property in its present "as is" condition. **Seller** grants to **Buyer**, its
130 agents, contractors and assigns, the right to enter the Property at any time during the Due Diligence Period for the
131 purpose of conducting Inspections; provided, however, that **Buyer**, its agents, contractors and assigns enter the
132 Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from losses,
133 damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any
134 person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer** will not engage
135 in any activity that could result in a mechanic's lien being filed against the Property without **Seller's** prior written
136 consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the Property resulting
137 from the Inspections and return the Property to the condition it was in prior to conduct of the Inspections, and
138 (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a result of the
139 Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that **Buyer's**
140 deposit will be immediately returned to **Buyer** and the Contract terminated.

141 **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
   YAR
142° **Buyer** (___) (___) and **Seller** (___) (___) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

CC-4   Rev 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved

**formsimplicity**

Exhibit "A"

143  parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
144  to ensure that all Property is on the premises.

145  **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD:** Seller will continue to operate the Property and any
146  business conducted on the Property in the manner described prior to Contract and will take no action that would
147  adversely impact the Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that
148  materially affect the Property or **Buyer's** intended use of the Property will be permitted ☐ only with **Buyer's** consent
149  ☒ without **Buyer's** consent.

150  **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
151  the norms where the Property is located.

152  **(a) Possession and Occupancy:** Seller will deliver possession and occupancy of the Property to **Buyer** at
153  closing. Seller will provide keys, remote controls, and any security/access codes necessary to operate all locks,
154  mailboxes, and security systems.

155  **(b) Costs:** Buyer will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
156  statements and recording fees for the deed. Seller will pay **Seller's** attorneys' fees, taxes on the deed and
157  recording fees for documents needed to cure title defects. If Seller is obligated to discharge any encumbrance at or
158  prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

159  **(c) Documents:** Seller will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
160  service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
161  service contractor from Seller advising each of them of the sale of the Property and, if applicable, the transfer of its
162  contract, and any assignable warranties or guarantees received or held by Seller from any manufacturer,
163  contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
164  documents, if applicable; assignments of leases; updated rent roll; tenant and lender estoppels letters; tenant
165  subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or **Buyer's** lender;
166  assignments of permits and licenses; corrective instruments; and letters notifying tenants of the change in
167  ownership/rental agent. If any tenant refuses to execute an estoppels letter, Seller will certify that information
168  regarding the tenant's lease is correct. If Seller is an entity, Seller will deliver a resolution of its Board of Directors
169  authorizing the sale and delivery of the deed and certification by the appropriate party certifying the resolution and
170  setting forth facts showing the conveyance conforms to the requirements of local law. Seller will transfer security
171  deposits to **Buyer. Buyer** will provide the closing statement, mortgages and notes, security agreements, and
172  financing statements.

173  **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
174  payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
175  premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
176  amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
177  allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
178  of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

179  **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
180  will be paid by Seller. If a certified, confirmed, and ratified special assessment is payable in installments, Seller will
181  pay all installments due and payable on or before the Closing Date, with any installment for any period extending
182  beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
183  Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
184  Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
185  completed as of the Closing Date but has not resulted in a lien before closing, Seller will pay the amount of the last
186  estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
187  does not apply to condominium association special assessments.

188  **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If Seller is a "foreign person" as defined by FIRPTA,
189  Seller and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. Seller and **Buyer** will
190  complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply
191  with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
       YAR

192  Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

CC-4   Rev 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved



Exhibit "A"

193  Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
194  withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
195  requirement.

196  **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to
197  receive, deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance
198  with the terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of
199  escrowed items to **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross
200  negligence. If Agent has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option,
201  (a) hold the escrowed items until the parties mutually agree to its disbursement or until a court of competent
202  jurisdiction or arbitrator determines the rights of the parties or (b) deposit the escrowed items with the clerk of
203  the court having jurisdiction over the matter and file an action in interpleader. Upon notifying the parties of such action,
204  Agent will be released from all liability except for the duty to account for items previously delivered out of escrow. If
205  Agent is a licensed real estate broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent
206  interpleads the escrowed items or is made a party because of acting as Agent hereunder, Agent will recover
207  reasonable attorney's fees and costs incurred, with these amounts to be paid from and out of the escrowed items and
208  charged and awarded as court costs in favor of the prevailing party.

209  **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
210  default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
211  complying party specifying the non-compliance. The non-complying party will have ___ days (5 days if left blank) after
212  delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

213  **12. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
214  not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
215  will be returned in accordance with applicable Florida Laws and regulations.

216  **13. DEFAULT:**

217  **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
218  the title marketable after diligent effort, **Buyer** may either (1) receive a refund of **Buyer's** deposit(s) or (2) seek
219  specific performance. If **Buyer** elects a deposit refund, **Seller** will be liable to Broker for the full amount of the
220  brokerage fee.

221  **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1) retain
222  all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
223  execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
224  specific performance. If **Seller** retains the deposit, **Seller** will pay the Brokers named in Paragraph 20 fifty percent
225  of all forfeited deposits retained by **Seller** (to be split equally among the Brokers) up to the full amount of the
226  brokerage fee. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1) terminate
227  the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without waiving
228  any remedy for **Buyer's** default.

229  **14. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
230  prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable
231  attorneys' fees, costs, and expenses.

232  **15. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
233  electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
234  document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
235  representing a party will be as effective as if given by or delivered to that party.

236  **16. DISCLOSURES:**

237  **(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales
238  Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial
239  real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net

240*  Buyer (YAR) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

CC-4  Rev 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved



Exhibit "A"

proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

**(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

**(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**17. RISK OF LOSS:**

**(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty. **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer** Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

**(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer** Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**18. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms "**Buyer**," "**Seller**" and "Broker" may be singular or plural. This Contract is binding upon **Buyer**, **Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**19. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**20. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

**(a) Seller's Broker:** <u>PHOENIX REALTORS LLC 3%    2%      Jhon Sanchez</u>
                             (Company Name)                                 (Licensee)

_____
                                    (Address, Telephone, Fax, E-mail)

who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

_____

**Buyer** (VAR) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-4  Rev 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved



(b) Buyer's Broker: PHOENIX REALTORS 3% 2%            Andres Parra
                    (Company Name)                    (Licensee)
_____

                    (Address, Telephone, Fax, E-mail)
who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated
by ☐ Seller's Broker ☒ Seller ☐ Buyer ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
_____
(collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
inquiries, introductions, consultations, and negotiations resulting in this transaction. Seller and Buyer agree to
indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
Paragraph 10, (3) any duty accepted by Broker at the request of Seller or Buyer, which is beyond the scope of
services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of Seller or Buyer.

**21. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
this Contract):

☐ Arbitration                      ☐ Seller Warranty                  ☐ Existing Mortgage
☐ Section 1031 Exchange            ☐ Coastal Construction Control Line ☐ Buyer's Attorney Approval
☐ Property Inspection and Repair   ☐ Flood Area Hazard Zone           ☐ Seller's Attorney Approval
☐ Seller Representations           ☒ Seller Financing                 ☐ Other _____

**22. ADDITIONAL TERMS:**
_____
_____
Seller agrees to finance.
_____
_____
Subject to Court Approval
Subject to Higher and Better Offers
Closing 20 days Following Entry of an Order
Approving the Motion to Approve Sale.
_____
_____

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE
ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL
FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE
PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE
EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR
REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER
ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL
REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER
REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF
THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS
AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE
AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**
                    YAR
Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-4  Rev 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

**formsimplicity**

Exhibit "A"

**Scanned with CamScanner**

334 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
335 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
336 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
337 to do so.

338* _____    Date: _____ 8/6/18 _____
339

340* THE NEXT CORPORATION LLC _____    Tax ID No: 83-1098029 _____
341 (Typed or Printed Name of **Buyer**)

342* Title: _____    Telephone: _____

343* _____    Date: _____
344 (Signature of **Buyer**)

345* _____    Tax ID No: _____
346 (Typed or Printed Name of **Buyer**)

347* Title: _____    Telephone: _____

348* **Buyer's Address for purpose of notice:** _____

349* Facsimile: _____    Email: _____


350* _____    Date: _____
351

352* _____    Tax ID No: _____
353 (Typed or Printed Name of **Seller**)

354* Title: _____    Telephone: _____

355* _____    Date: _____
356 (Signature of **Seller**)

357* _____    Tax ID No: _____
358 (Typed or Printed Name of **Seller**)

359* Title: _____    Telephone: _____

360* **Seller's Address for purpose of notice:** _____

361* Facsimile: _____    Email: _____

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR® REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

362* Buyer ( YAR )(____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-4   Rev 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved


formsimplicity

ADDENDUM TO CONTRACT

This document will become part of and addendum to the contract offer, dated on ⸄/⸃/2018, between Sellers (see below) and Buyer.

This list of properties represents the properties included in the offer to purchase.

| | | Price Per Unit | Total |
|---|---|---|---|
| 1710 NW 1st CT Miami FL  33136 | 20 Units | 112 K/unit | 2,240,000 |
| 1730 NW 1st CT Miami FL  33136 | 8 Units | 108K/unit | 864,000 |
| **MIAMI BEVERLY LLC** | | | |
| 1231 NW 61 Street Miami FL  33162 | 21 units | 85K /unit | 1,785,000 |
| 1250 NW 62 Street Miami FL  33162 | 27 units | 85K/unit | 2,295,000 |
| 6040 NW 12 Avenue Miami FL  33127 | 21 units | 86K/unit | 1,806,000 |
| **1336 NW 60 LLC** | | | |
| 1335 NW 60 Street Miami FL    33142 | 6 units | 85K/unit | 510,000 |
| **THE HOLDINGS AT CITY LLC** | | | |
| 1341 NW 60 Street Miami FL    33142 | 6 units | 85K/unit | 510,000 |
| The Reverend LLC | | | |
| 6820 17 Ave Miami, FL 33142 | 22 units | 45K/unit | 990,000 |
| | | Total : | 11,000,000 |

Exhibit "A"

Label Matrix for local noticing
113C-1
Case 18-14512-LMI
Southern District of Florida
Miami
Mon Aug  6 18:37:10 EDT 2018

The Holdings at City, LLC
99 Roberts Rd
Englewood Cliffs, NJ 07632-2318

All Quality Electrical Services, Inc.
14750 S. River Dr
Miami, FL 33167-1039

Angelica McKinnon
1710 NW 1 Court
Unit 20
Miami, FL 33136-1737

Anthony Frazier
1710 NW 1 Court
Unit 4
Miami, FL 33136-1730

Aretha Jones
1710 NW 1 Court
Unit 5
Miami, FL 33136-1730

Brett Lieberman
401 E. Las Olas Blvd
#1400
Fort Lauderdale, FL 33301-2218

City of Miami
444 SW 2 Ave
10 Floor
Miami, FL 33130

Danielle Peterson
1710 NW 1 Court
Unit 1
Miami, FL 33136-1730

Erica Burns
1710 NW 1 Court
Unit 18
Miami, FL 33136-1737

Francisco Ramirez
1710 NW 1 Court
Unit 11
Miami, FL 33136-1736

Gadi Shushan
c/o Eric Irons, Esq.
14 NE 1 Avenue
Miami, FL 33132-2431

Julia Dean
1710 NW 1 Court
Unit 6
Miami, FL 33136-1730

Linda Leali, Esq.
777 Brickell Ave # 500
Miami, FL 33131-2803

Lula Perry
1710 NW 1 Court
Unit 8
Miami, FL 33136-1736

Marcelino Norales
1710 NW 1 Court
Unit 16
Miami, FL 33136-1737

Miami-Dade County Property Tax Collector
200 NW 2 Ave
Miami, FL 33128-1733

Moving Lives of Kids Art Center
POB 8772
Pittsburgh, PA 15221-0772

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Rachel S. Glorioso-Dooley
444 SW 2 Ave
#945
Miami, FL 33130-1910

Rance Hollis
1710 NW 1 Court
Unit 7
Miami, FL 33136-1730

Raquel Jones
1710 NW 1 Court
Unit 15
Miami, FL 33136-1737

Robert Clavijo
1710 NW 1 Court
Unit 13
Miami, FL 33136-1736

Shaela Freeman
1710 NW 1 Court
Unit 17
Miami, FL 33136-1737

Thomas Messana, Esq.
401 E. Las Olas Blvd
#1400
Fort Lauderdale, FL 33301-2218

Tramecia Scipp
1710 NW 1 Court
Unit 14
Miami, FL 33136-1736

Tranicia Scipp
1710 NW 1 Court
Unit 19
Miami, FL 33136-1737

Ido J Alexander Esq
Leiderman Shelomith Alexander et al.
2699 Stirling Rd.
C-401
Fort Laudedale, FL 33312-6598

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

End of Label Matrix
Mailable recipients     27
Bypassed recipients      1
Total                   28

```
Label Matrix for local noticing          13300 Alexandria Dr. Holdings, LLC       All Quality Electrical Services, Inc.
113C-1                                    99 Roberts Rd                           14750 S. River Dr
Case 18-14511-LMI                         Englewood Cliffs, NJ 07632-2318         Miami, FL 33167-1039
Southern District of Florida
Miami
Mon Aug  6 18:36:26 EDT 2018

Andre Billingslea                         Brett Lieberman                         Cesar Ramirez
1710 NW 1 Court                           401 E. Las Olas Blvd                    1710 NW 1 Court
Unit 6                                    #1400                                   Unit 3
Miami, FL 33136-1730                      Fort Lauderdale, FL 33301-2218          Miami, FL 33136-1730


City of Miami                             Emmanuel Sanon                          Gadi Shushan
444 SW 2 Ave                              1710 NW 1 Court                         c/o Eric Irons, Esq.
10 Floor                                  Unit 1                                  14 NE 1 Avenue
Miami, FL 33130                           Miami, FL 33136-1730                    Miami, FL 33132-2431


Linda Leali, Esq.                         Miami-Dade County Property Tax Collector   Moving Lives of Kids Art Center
777 Brickell Ave # 500                    200 NW 2 Ave                            POB 8772
Miami, FL 33131-2803                      Miami, FL 33128-1733                    Pittsburgh, PA 15221-0772


Office of the US Trustee                  Oscar Lopez                             Rachel S. Glorioso Dooley
51 S.W. 1st Ave.                          1710 NW 1 Court                         444 SW 2 Ave
Suite 1204                                Unit 5                                  #945
Miami, FL 33130-1614                      Miami, FL 33136-1730                    Miami, FL 33130-1910


Terry Jackson                             Thomas Messana, Esq.                    Vanessa David
1710 NW 1 Court                           401 E. Las Olas Blvd                    1710 NW 1 Court
Unit 4                                    #1400                                   Unit 7
Miami, FL 33136-1730                      Fort Lauderdale, FL 33301-2218          Miami, FL 33136-1730


Vilma Calix                               Zinaida Bratu                           Ido J Alexander Esq
1710 NW 1 Court                           1710 NW 1 Court                         Leiderman Shelomith Alexander et al.
Unit 8                                    Unit 2                                  2699 Stirling Rd.
Miami, FL 33136-1736                      Miami, FL 33136-1730                    C-401
                                                                                  Fort Laudedale, FL 33312-6598



                    The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Miami                                  End of Label Matrix
                                          Mailable recipients     20
                                          Bypassed recipients      1
                                          Total                    21
```

```
Label Matrix for local noticing        Reverend, LLC                           Air Quality Electrical Services, Inc.
113C-1                                  99 Roberts Rd                           14750 S. River Dr
Case 18-14510-LMI                       Englewood Cliffs, NJ 07632-2318         Miami, FL 33167-1039
Southern District of Florida
Miami
Mon Aug  6 18:35:46 EDT 2018

Brett Lieberman                         City of Miami                           Gadi Shushan
401 E. Las Olas Blvd                    444 SW 2 Ave                            c/o Eric Irons, Esq.
#1400                                   10 Floor                                14 NE 1 Avenue
Fort Lauderdale, FL 33301-2218          Miami, FL 33130                         Miami, FL 33132-2431


Linda Leali, Esq.                       Miami-Dade County Property Tax Collector    Moving Lives of Kids Art Center
777 Brickell Ave # 500                  200 NW 2 Ave                            POB 8772
Miami, FL 33131-2803                    Miami, FL 33128-1733                    Pittsburgh, PA 15221-0772



Office of the US Trustee                Rachel S. Glorioso-Dooley               Thomas Messana, Esq.
51 S.W. 1st Ave.                        444 SW 2 Ave                            401 E. Las Olas Blvd
Suite 1204                              #945                                    #1400
Miami, FL 33130-1614                    Miami, FL 33130-1910                    Fort Lauderdale, FL 33301-2218


Ido J Alexander Esq
Leiderman Shelomith Alexander et al.
2699 Stirling Rd.
C-401
Fort Laudedale, FL 33312-6598




                The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Miami                                End of Label Matrix
                                        Mailable recipients    12
                                        Bypassed recipients     1
                                        Total                  13
```

```
Label Matrix for local noticing          1536 NW 60 LLC                        A1 Quality Electrical Services, Inc.
113C-1                                   99 Roberts Rd                         14750 S. River Dr
Case 18-14509-LMI                        Englewood Cliffs, NJ 07632-2318       Miami, FL 33167-1039
Southern District of Florida
Miami
Mon Aug  6 18:34:56 EDT 2018

Antwan Billups                           Audrey Turnbull                       Brett Lieberman
1341 NW 60 Street                        1341 NW 60 Street                     401 E. Las Olas Blvd
Unit 5                                   Unit 3                                #1400
Miami, FL 33142-8278                     Miami, FL 33142-8278                  Fort Lauderdale, FL 33301-2218


Carlene Bynes                            City of Miami                         Ella Eason
1341 NW 60 Street                        444 SW 2 Ave                          1341 NW 60 Street
Unit 2                                   10 Floor                              Unit 6
Miami, FL 33142-8278                     Miami, FL 33130                       Miami, FL 33142-8278


Frances Ford                             Gadi Shushan                          Johnisha Lewis
1335 NW 60 Street                        c/o Eric Irons, Esq.                  1335 NW 60 Street
Unit 1                                   14 NE 1 Avenue                        Unit 4
Miami, FL 33142-8277                     Miami, FL 33132-2431                  Miami, FL 33142-8277


Linda Leal, Esq.                         Maybell Johnson                       Melinda Davis
777 Brickell Ave #500                    1335 NW 60 Street                     1335 NW 60 Street
Miami, FL 33131-2803                     Unit 6                                Unit 2
                                         Miami, FL 33142-8277                  Miami, FL 33142-8277


Miami-Dade County Property Tax Collector Miami-Dade County Tax Collector      Moving Lives of Kids Art Center
200 NW 2 Ave                             140 W Flagler St #101                 POB 8772
Miami, FL 33128-1733                     Miami, FL 33130-1559                  Pittsburgh, PA 15221-0772


Office of the US Trustee                 Rachel S. Glorioso Dooley             Rose Jackson
51 S.W. 1st Ave.                         444 SW 2 Ave                          1341 NW 60 Street
Suite 1204                               #945                                  Unit 1
Miami, FL 33130-1614                     Miami, FL 33130-1910                  Miami, FL 33142-8278


Stephan Clark                            Terry Gethers                         Thomas Messana, Esq.
1341 NW 60 Street                        1335 NW 60 Street                     401 E. Las Olas Blvd
Unit 4                                   Unit 3                                #1400
Miami, FL 33142-8278                     Miami, FL 33142-8277                  Fort Lauderdale, FL 33301-2218


Ido J Alexander Esq
Leiderman Shelomith Alexander et al.
2699 Stirling Rd.
C-401
Fort Laudedale, FL 33312-6598
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

End of Label Matrix
Mailable recipients    24
Bypassed recipients     1
Total                  25

```
Label Matrix for local noticing        City of Miami                          Miami Beverly, LLC
113C-1                                  Office of the City Attorney            99 Roberts Rd
Case 18-14506-LMI                       444 SW 2nd Avenue                      Englewood Cliffs, NJ 07632-2318
Southern District of Florida            Suite 945
Miami                                   Miami, FL 33130-1910
Mon Aug  6 18:31:34 EDT 2018

Miami Development & Holdings, LLC        Miami-Dade County Tax Collector        Alexander Dupont
c/o Michael S. Hoffman, Esq.            c/o Alexis Gonzalez                    1250 NW 62 Street
909 N Miami Bch Blvd                    200 NW 2nd Avenue, Suite 430           Unit 18
#201                                    Miami, FL 33128-1733                   Miami, FL 33147-8181
North Miami Beach, FL 33162-3712

Alfred Hepburn                          All Quality Electrical Services, Inc.  Angela Tarver
1231 NW 61 Street                       14750 S. River Dr                      1250 NW 62 Street
Unit 11                                 Miami, FL 33167-1039                   Unit 7
Miami, FL 33142-8239                                                           Miami, FL 33147-8177

Atiba Shaw                              BLACK CUB LLC.                         Brett Lieberman
6040 NW 12 Avenue                       P.O. BOX 37756                         401 E. Las Olas Blvd
Unit 6                                  BALTIMORE, MD 21297-3756               #1400
Miami, FL 33127-1002                                                          Fort Lauderdale, FL 33301-2218

CAZ CREEK FLORIDA II                    CONSOLIDATED TELEPHONE CO.             Cecil Brown
P.O. BOX 54900                          ATTN: SILVO SANTANA                    1231 NW 61 Street
NEW ORLEANS, LA. 70154-4900             780 N.W. 42 AVE, #FL-3                 Unit 1
                                        MIAMI, FLORIDA 331265597               Miami, FL 33142-8248

City of Miami                           Clayon White                          Debra Lightfoot
444 SW 2 Ave                            1250 NW 62 Street                      6040 NW 12 Avenue
10 Floor                                Unit 9                                 Unit 1
Miami, FL 33130                         Miami, FL 33147-8179                   Miami, FL 33127-1001

Debra Taylor                            Deserie Creightney                     Destinee Johnson
6040 NW 12 Avenue                       1250 NW 62 Street                      1250 NW 62 Street
Unit 9                                  Unit 14                                Unit 23
Miami, FL 33127-1002                    Miami, FL 33147-8179                   Miami, FL 33147-8182

Diabaija Grant                          Dishiela Dumas                         Edris Canonier
6040 NW 12 Avenue                       1250 NW 62 Street                      1250 NW 62 Street
Unit 20                                 Unit 17                                Unit 19
Miami, FL 33127-1055                    Miami, FL 33147-8181                   Miami, FL 33147-8181

Elnease Cary                            Fred McNair                            Gadi Shushan
6040 NW 12 Avenue                       1250 NW 62 Street                      c/o Eric Irons, Esq.
Unit 12                                 Unit 24                                14 NE 1 Avenue
Miami, FL 33127-1051                    Miami, FL 33147-8182                   Miami, FL 33132-2431

Gaynisha Williams                       Gaynisha Williams, Nathanael Mars,     George Townsend
6040 NW 12 Avenue                       Shannin Daniels, Lakeisha Chatfield and 6040 NW 12 Avenue
Unit 7                                  Lakeisha Chatfield on behalf of minor,TC Unit 3
Miami, FL 33127-1002                                                           Miami, FL 33127-1001
```

James Roberts
1250 NW 62 Street
Unit 8
Miami, FL 33147-8179

Jaqueline Ansah
1250 NW 62 Street
Unit 10
Miami, FL 33147-8179

Jessica Nelson
1250 NW 62 Street
Unit 16
Miami, FL 33147-8181

John Naphier
1250 NW 62 Street
Unit 15
Miami, FL 33147-8181

Linda Leali, Esq.
777 Brickell Ave # 500
Miami, FL 33131-2803

MIKON FINANCIAL SERVICES INC.
780 N.W. 42 AVE. #300
MIAMI, FLORIDA 33126-5536

Miami-Dade County Property Tax Collector
200 NW 2 Ave
Miami, FL 33128-1733

Miami-Dade Water and Sewer Department
POB 330316
Miami, FL 33233-0316

Moving Lives of Kids Art Center
MLK Mural
POB 8772
Pittsburgh, PA 15221-0772

Natasha Williams
1231 NW 61 Street
Unit 16
Miami, FL 33142-8249

Nicole Sims
1250 NW 62 Street
Unit 25
Miami, FL 33147-8182

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Patrice Blair
1231 NW 61 Street
Unit 4
Miami, FL 33142-8248

Rachel S. Glorioso Dooley
444 SW 2 Ave
#945
Miami, FL 33130-1910

Rebecca Parsons Schram, Esq.
Legal Services of Greater Miami, Inc.
4343 W. Flagler Street
#100
Miami, FL 33134-1585

Roosevelt Jones
1250 NW 62 Street
Unit 6
Miami, FL 33147-8177

Sandra Graves
1250 NW 62 Street
Unit 11
Miami, FL 33147-8179

Sharena Brown
6040 NW 12 Avenue
Unit 14
Miami, FL 33127-1051

Sherika Green
6040 NW 12 Avenue
Unit 5
Miami, FL 33127-1001

TFLTC LLC.
4747 EXECUTIVE DR, #510
SAN DIEGO, CA. 92121-3100

Terell Linton
1250 NW 62 Street
Unit 5
Miami, FL 33147-8177

Terri Smith
1250 NW 62 Street
Unit 4
Miami, FL 33147-8177

Thomas Messana, Esq.
401 E. Las Olas Blvd
#1400
Fort Lauderdale, FL 33301-2218

Wilson Delice
1250 NW 62 Street
Unit 3
Miami, FL 33147-8177

Gaynisha Williams
c/o Joanne Gelfand, Esq.
Akerman LLP
98 S.E. 7th Street
Suite 1100
MIAMI, FL 33131-3525

Ido J Alexander Esq
Leiderman Shelomith Alexander et al.
2699 Stirling Rd.
C-401
Fort Laudedale, FL 33312-6598

Lakeisha Chatfield
c/o Joanne Gelfand, Esq.
Akerman LLP
98 S.E. 7th Street
Suite 1100
MIAMI, FL 33131-3525

Linda Leali
Linda Leali, P.A.
777 Brickell Avenue
Suite 500
Miami, Fl 33131-2803

Nathanael Mars
c/o Joanne Gelfand, Esq.
Akerman LLP
98 S.E. 7th Street
Suite 1100
MIAMI, FL 33131-3525

Shannon Daniels
c/o Joanne Gelfand, Esq.
Akerman LLP
98 S.E. 7th Street
Suite 1100
MIAMI, FL 33131-3525

```
Tamara Chatfield                        Zach B Shelomith
c/o Joanne Gelfand, Esq.                2699 Stirling Rd # C401
Akerman LLP                             Ft Lauderdale, FL 33312-6598
98 S.E. 7th Street
Suite 1100
MIAMI, FL 33131-3525
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Miami                                End of Label Matrix
                                        Mailable recipients    61
                                        Bypassed recipients     1
                                        Total                  62
```