UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:

MIAMI BEVERLY, LLC

CASE NO. 18-14506-BKC-LMI
Chapter 11 (Lead Case)

Jointly Administered

1336 NW 60, LLC
REVEREND, LLC
13300 ALEXANDRIA DR. HOLDINGS, LLC
THE HOLDINGS AT CITY, LLC

CASE NO. 18-14509-BKC-LMI
CASE NO. 18-14510-BKC-LMI
CASE NO. 18-14511-BKC-LMI
CASE NO. 18-14512-BKC-LMI

Debtors
_____/

## DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF
## REORGANIZATION OF JOINT DEBTORS

**IMPORTANT**: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED CHAPTER 11 PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

Submitted on September 25, 2018 by:

LEIDERMAN SHELOMITH ALEXANDER
+ SOMODEVILLA, PLLC
2699 Stirling Road, Suite C401
Fort Lauderdale, Florida 33312
Tel. 954.920.5355  Fax. 954.920.5371
Zach B. Shelomith - Fla. Bar No. 0122548
zbs@lsaslaw.com
Ido J. Alexander – Fla. Bar No. 51892
ija@lsaslaw.com
*Attorneys for the Debtors*

## I. INTRODUCTION

This is the Disclosure Statement (the "Disclosure Statement") in the Chapter 11 case of Joint Debtors, Miami Beverly LLC, 1336 NW 60 LLC, Reverend LLC, 13300 Alexandria Dr Holdings LLC, and The Holdings At City, LLC (the "Debtors"), which are the Plan Proponents. This Disclosure Statement contains information about the Debtors and describes the Chapter 11 Plan of Reorganization (the "Plan") filed by the Debtors on September 25, 2018. A full copy of the Plan is being filed contemporaneously herewith [ECF # 165]. **Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.**

The proposed distributions under the Plan are discussed below. Pursuant to this Plan, the Debtors' real properties described below will be sold and secured and unsecured creditors will receive a distribution of 100% of their allowed claim(s).

### A. Purpose of This Document

This Disclosure Statement describes:

- The Debtors and significant events during the bankruptcy case;
- How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Debtors believe the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1. *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the Clerk of Court, United States Bankruptcy Court, 301 North Miami Avenue, Room 150, Miami, FL 33128. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted. **(Please note: all blanks contained in this Disclosure Statement will be filled in upon approval of the Disclosure Statement, for the version to be mailed to all creditors and interested parties.)**

2. *Deadline for Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon Ido J. Alexander, Counsel for the Debtors, 2699 Stirling Rd # C401, Ft. Lauderdale, FL 33312 by _____.

3. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Zach B. Shelomith, Counsel for the Debtors, 2699 Stirling Rd # C401, Ft. Lauderdale, FL 33312.

C. **Disclaimer**

*On _____, the Court approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

II. **BACKGROUND**

A. **Events Leading to Chapter 11 Filing and Summary of the Plan**

The Debtors are each organized as Florida limited liability Companies, with mailing addresses of 99 Roberts Rd., Englewood Cliffs, NJ 07632. The Debtors' managing member is Denise Vaknin ("Vaknin").

The Debtors own the following real properties, located in Miami, Florida (collectively, the "Real Properties"):

| Name of Debtor/Owner | Property Address | Property Folio Number |
|---|---|---|
| Miami Beverly, LLC | 1250 NW 62 St, Miami, FL 33147-8175 | 01-3114-043-0290 |
| Miami Beverly, LLC | 1231 NW 62 St, Miami, FL 33147-8175 | 01-3114-043-0291 |
| Miami Beverly, LLC | 6040 NW 12 Ave, Miami, FL 33147-8175 | 01-3114-043-0540 |
| 1336 NW 60, LLC | 1335 NW 60 St, Miami, FL 33142-8277 | 01-3114-043-0790 |
| 1336 NW 60, LLC | 1341 NW 60 St, Miami, FL 33142-8277 | 01-3114-043-0800 |
| Reverend, LLC | 6820 NW 1 St, Miami, FL 33147-7475 | 01-3115-005-1240 |
| 13300 Alexandria Dr. Holdings, LLC | 1730 NW 1 Ct, Miami, FL 33136-1748 | 01-3125-048-1050 |
| The Holdings at City, LLC | 1710 NW 1 Ct, Miami, FL 33136-1700 | 01-3125-048-1060 |

According to the Miami-Dade County, Florida property appraiser, the market value of all of the Debtors' Real Properties total $2,324,635.00, and is as follows:

| Name of Debtor/Owner | Property Address | Market Value Based on Miami-Dade Property Appraiser |
|---|---|---|
| Miami Beverly, LLC | 1250 NW 62 St, Miami, FL 33147-8175 | $456,742.00 |
| Miami Beverly, LLC | 1231 NW 62 St, Miami, FL 33147-8175 | $178,804.00 |
| Miami Beverly, LLC | 6040 NW 12 Ave, Miami, FL 33147-8175 | $205,723.00 |

| 1336 NW 60, LLC | 1335 NW 60 St, Miami, FL 33142-8277 | $74,613.00 |
| --- | --- | --- |
| 1336 NW 60, LLC | 1341 NW 60 St, Miami, FL 33142-8277 | 154,044.00 |
| Reverend, LLC | 6820 NW 1 St, Miami, FL 33147-7475 | 103,415.00 |
| 13300 Alexandria Dr. Holdings, LLC | 1730 NW 1 Ct, Miami, FL 33136-1748 | $392,294.00 |
| The Holdings at City, LLC | 1710 NW 1 Ct, Miami, FL 33136-1700 | $759,000.00 |

**However, the Debtors believe that the actual market value of the Real Properties is significantly higher.**

On October 29, 2014, the City of Miami filed a Complaint in the Circuit Court in and for Miami-Dade County, for Injunctive Relief and Money Damages against Debtors, enforcing various liens and assessments associated with the buildings owned by the Debtors. Thereafter, the City of Miami sought entry of a final judgment from the State Court. An Order Granting Default Final Judgments were entered on June 4, 2015 and a Final Judgments were entered on December 24, 2015 (collectively, the "Final Judgments"), in the aggregate amounts of $3,126,387.62.

Following entry of the Judgments, the City of Miami sought the appointment of a receiver over the Real Properties. On June 4, 2015 and June 10, 2015, the State Court appointed Ms. Linda Leali, as receiver (the "Receiver") over Real Properties. The Debtors dispute the extent of the City's claim as having been mitigated, and plan on either objecting to same, and/or negotiating potential reduction of the Final Judgment Amount with the City of Miami, Florida.

In addition to the City of Miami Final Judgments, there are three other main constituency of creditors: 1) Aggrieved former tenants of the Debtors, who had filed complaints in the District Court, and that have asserted claims against on of the estates in an amount exceeding $1.5 million; 2) Miami Development & Holdings, LLC, an assignee of a claim by Mr. Gabi Shushan. An individual who has alleged ownership of the Debtors and/or claim that the Debtors had sold their interest in the Real Properties without any consideration paid and/or proof in writing of said sale transaction. The Debtors have joined with equity holders' objection to his claim; and 3) other claims against the estates arising in connection with the Receiver and her counsel, as well as the Receiver, in an her individual capacity, raising claims for defamation in connection with pleadings filed by the Debtors in the receivership court proceeding. The Debtors intend on addressing these claims through the claim objection process, and/or negotiate with the relevant constituency allowed claims.

The timing of the bankruptcy filing was precipitated mainly by Sherriff's sales, noticed by the City of Miami, which were scheduled within a short period of time after the date of this bankruptcy filing. This bankruptcy proceeding was filed not only to preserve the Real Properties from Sherriff's sale(s), but to preserve the value of the Real Properties for the benefit of the Debtors' creditors and equity security holders. The Debtor believe that the Real Properties can be sold for an amount that would pay all allowed claimants in full.

As such, pursuant to the Plan as well as a separate motion to sell previously filed with the Court [ECF # 124], the Debtors will be selling the Real Properties and moving in an expeditious fashion to accomplish same.

B.     **Projected Recovery of Avoidable Transfers**

The Debtors conducted an analysis of all transfers made by it in the four (4) years preceding the Petition Date. After analysis, the Debtors does not believe that any preference, fraudulent conveyance, or other avoidance actions exist.

### C. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article IV of the Plan.

### D. Current and Historical Financial Conditions

The identity and fair market value of the Debtors' assets are listed above and included in the Plan as well as the Initial Schedules filed with the Court, which may be subject to further amendment. In particular, the valuation of the Real Properties was performed by reviewing the Miami-Dade County, Florida Property Appraiser's website. **The Debtors believe that that Real Properties have a value in excess of such valuation**, and will amend its Initial Schedules or provide such additional information to creditors upon the discovery of additional information.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Debtors have *not* placed the following claims in any class:

#### 1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtors' Chapter 11 case which are allowed under 11 U.S.C. § 507(a)(2). Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, if any. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. <u>The Debtors request that the Court set an administrative claims bar date of fifteen (15) days after the date of confirmation of the Plan</u>.

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date (e.g. Custodian Fees, Custodian's Counsel). | Est. $35,000 | Paid in full on the Effective Date of the Plan, or according to terms of obligation, if later. The Debtors have been paying post-petition expenses in the normal course, however, to the extent any fees such as Custodian fees and her counsel's fees and expenses are outstanding, such fees will be paid in full on the Effective Date. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | N/A |
| Professional Fees, as approved by the Court. | Est. $120,000 | Paid in full on the Effective Date of the Plan, or according to separate agreement, or according to court order if such fees have not been approved by the Court on the Effective Date of the Plan. |
| Clerk's Office Fees | $0.00 | N/A |
| Other administrative expenses | $0.00 | N/A |
| Office of the U.S. Trustee Fees | Unknown | Paid in full on the Effective Date of the Plan. |
| TOTAL | Est. $155,000 | |

2.   *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by 11 U.S.C. § 507(a)(8). Unless the holder of such an 11 U.S.C. § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. The Debtors do not believe that any § 507(a)(8) priority tax claims exist, except secured ad valorem priority tax claims under 11 U.S.C. § 507(a)(8)(B), which are treated as set forth in the Plan, described below.

3.   *United States Trustee Fees*

All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Specifically, the Debtors will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of the Plan, within fourteen (14) business days of the entry of an order confirming the Plan. Furthermore, the Debtors (as reorganized) will file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an

Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the U.S. Bankruptcy Code.

### C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

#### 1. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estates (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtors' secured prepetition claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Secured Real Estate Tax | Unimpaired | Class 1, consisting of all Secured Real Estate Tax Against Real Properties, to the extent any exist, is unimpaired by this Plan. The claims included within this class are secured by the Real Properties and include claims by the Miami-Dade County Tax Collector.<br><br>Class 1 creditor will be paid in full, plus statutory interest, at the closing of the sale of the Real Properties, to the extent any, which the Debtors expect to take place prior to January 1, 2019. Class 1 claimants will retain their lien(s) on the Real Properties until such payment is made. |
| Class 2 – Secured Judgment Liens of the City of Miami, Florida | Unimpaired | Class 2, the Secured Claims of the City of Miami, Florida (the "City of Miami") are unimpaired by this Plan. These claims are secured only by the relevant real properties to which its judgment lien have been recorded against. For all purposes under the Plan, each of the City of Miami Secured Claims in Class 2 are a separate Secured Claim against the applicable Debtors' Estates. That is, the Debtors' estates are not substantively consolidated for any purpose, including without limitation, distribution of the proceeds from any sale(s) of the Debtors' properties.<br><br>The Debtors will be filing objection(s) to these claims and/or adversary proceeding(s) to determine the validity, amount and extent of the disputed claims.<br><br>Any allowed secured claims by holders of Class 2 Claims will be paid in full upon the later of closing of the sale of the Real Properties, or the entry of final order determining the validity, amount and extent of the disputed claims. |

2. *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. § 507(a). The following chart identifies the Plan's proposed treatment of Class 3 (General Unsecured Creditors), which contains general unsecured claims against the Debtors:

| Class | Impairment | Treatment |
|---|---|---|
| Class 3 – General Unsecured Creditors | Unimpaired | Class 3 consists of all allowed general unsecured claims and is unimpaired by this Plan. This class is comprised of the general unsecured claim asserted by: |
| | | Miami Development & Holdings, LLC |
| | | Gaynisha Williams, |
| | | Nathanael Mars, |
| | | Lakeisha Chatfield, |
| | | Shannon Daniels, |
| | | Lakeisha Chatfield on Behalf of T.C. |
| | | Linda Leali, |
| | | Linda Leali, P.A. |
| | | Linda Leali, as Court Appointed Receiver (Pre-Petition) |
| | | Messana, P.A., as Counsel for the Receiver (Pre-Petition) |
| | | The Debtors have filed an objection to the claims by Miami Development & Holdings, LLC. Debtors further intend on objecting to the Claims asserted by Gaynisha Williams, Nathanael Mars, Lakeisha Chatfield, Shannon Daniels, Lakeisha Chatfield on Behalf of T.C., Linda Leali, Linda Leali, P.A., and further reserve the right to object to any other general unsecured claims asserted against the Debtors. |
| | | For all purposes under the Plan, each of the General Unsecured Creditors' Claim(s) are a separate Claim against the applicable Debtors' Estates. That is, the Debtors' estates are not substantively consolidated for any purpose, including without limitation, distribution of the proceeds from any sale(s) of the Debtors' properties. |
| | | Any allowed general unsecured claims by holders of Class 3 Claims will be paid in full upon the later of closing of the sale of the Real Properties, or the entry of final order determining the validity, amount and extent of the disputed claims. |

As stated above, holders of allowed general unsecured claims will receive a distribution of 100%, which is equal to what holders of allowed general unsecured claims would receive in a hypothetical Chapter 7. Accordingly, creditors are receiving the same amount by virtue of this Plan, as they would if the Debtors' cases were Chapter 7 proceedings.

4.  *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtors. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class | Impairment | Treatment |
|---|---|---|
| Class 4 - Equity Interest(s) in the Debtors | Unimpaired | Class 4 consists of the allowed equity interests in the Debtors, which includes interests in any share of preferred stock, common stock, membership interest or other instrument evidencing ownership interest in the Debtors, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest. Class 4 equity interest(s) of the Debtors shall retain any and all net proceeds after payment in full of allowed claims, including payment to the United States Trustee of its quarterly fees and payments to the Debtors' professionals.<br><br>The Debtors have filed an objection to the claims by Miami Development & Holdings, LLC, challenging the validity of the equity interest claim.<br><br>Any allowed Class 4 Claim will be paid in full upon the later of closing of the sale of the Real Properties, or the entry of final order determining the validity, amount and extent of the disputed claims. |

D.  **Means of Implementing the Plan**

The means necessary for the execution of this Plan include the proceeds from the sale of the Real Properties. The Debtors may sell the Real Properties together or separately, using its business judgment, and upon Court approval. The Debtors have sought the approval of bid procedures, sale, and other related matters through the appropriate motion(s). The sale will be free and clear of any and all liens, claims, encumbrances and other interests, except as specifically set forth above.

The Plan treats the Debtors as comprising a single Estate **solely** for the purposes of classification of Claims, voting on the Plan and confirmation of the Plan, **but not** for any other purpose such as allowance and distributions of Allowed Claims. Such treatment shall not affect any Debtor's status as a separate legal entity, change the organization structure of the Debtor's business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, cause the transfer of any assets, **nor result in the substantive consolidation of the Debtors**; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities. Such treatment shall also not affect any Cause of Action available to any Debtor or the Debtors' Estates. The above-described treatment serves only as a mechanism to effectuate a fair distribution of value to the holders of Allowed Claims. The Plan shall be deemed to be a motion, pursuant to Bankruptcy Rule 9013, by the Debtors for limited and partial consolidation with respect to the Plan as set forth herein. Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court at the Confirmation hearing. Failure to timely object to such limited or partial consolidation may result in consolidation of this case in accordance herewith, without further hearing. The consolidation effected pursuant to this Article shall not affect, without limitation: any (a) Claim(s) or Cause(s) of Action, including, without limitation, any of the Debtors' defenses

thereto or their ability to assert any counterclaim; (b) the Debtor's setoff or recoupment rights, or (c) the requirements for any third party to establish mutuality prior to the Debtors' or the Estates' consolidation in order to assert a right of setoff against the Debtors, or the Estates.

To the extent that the Debtors wish to prepay any amounts due under this Plan from third party sources, the Debtors reserves the right to do so without penalty and to seek the entry of a final decree closing this case.

The Debtors, as reorganized, will retain and will be re-vested in all property of the bankruptcy estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to this Plan and property transferred to Creditors of the Debtors pursuant to the expressed terms hereof. The retained property shall be used by the Debtors in the ordinary course of its business.

### E. **Risk Factors**

The proposed Plan has the following risks:

- The Debtors' projection(s) as to the valuation of the Real Properties and the ability to pay allowed claimholders in full upon the sale of the Real Properties is speculative and based on information available at the time. There is no guarantee that the sale proceeds will be sufficient to pay all allowed claimholders in full.

- Failure to Satisfy Vote Requirement - the Debtors are seeking the affirmative vote of at least one impaired class of creditors, if one exists. If the Plan does not receive sufficient votes for confirmation pursuant to 11 U.S.C. § 1129(a), then the Plan cannot be confirmed.

- Natural hazards, including extreme weather conditions, such as hurricanes, which could cause severe damage to the Debtors' Real Properties.

- The Plan May Not Be Accepted or Confirmed – while the Debtors believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there is no assurance that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval, but there is also no assurance that an alternative plan would be confirmed, that the case will not be converted to a Chapter 7 proceeding, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the creditors and the Debtors as the terms of the Plan.

### F. **Executory Contracts and Unexpired Leases**

The Debtors intend to sell the Real Properties, and as part thereof, seek by separate Court Order, to assume and assign any and all real property leases associated with the Real Properties sold.

The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the date of the order confirming the Plan, upon the Effective Date of the Plan. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract will be set by the Court at the Confirmation Hearing.*** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G. Tax Consequences of Plan

***Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.***

The Debtors may incur capital gains tax(es) associated with the sale of the Real Properties.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in 11 U.S.C. §§ 1129(a) or (b). These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believe that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.1

In this case, the Debtors believe no classes of creditors are impaired, as all allowed claims are expected to be paid in full. The Debtors believe that all classes of creditors are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan, but do have the right to object to confirmation of the Plan.

#### 1. What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtors have scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated; or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Fed. R. Bankr. P. 3018(a).

***The deadline for filing a proof of claim in this case was August 20, 2018.***

### 2. *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in 11 U.S.C. § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;

- holders of other claims that are not "allowed claims"" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims in unimpaired classes;

- holders of claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3) and (a)(8); and

- holders of claims in classes that do not receive or retain any value under the Plan;

- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.**

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in this Disclosure Statement.

### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by 11 U.S.C. § 1129(b). A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims if it meets all the requirements for consensual confirmation except the voting requirements of 11 U.S.C. § 1129(a)(8), does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.***

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

Since the Debtors are selling their only asset(s) – the Real Properties – for the benefit of their creditors and equity security holders, creditors are receiving the same amount by virtue of the Plan, as they would if the Debtors' case were Chapter 7 proceedings.

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless such liquidation or reorganization is proposed in the Plan. The Debtors believe that the value of the Real Properties is of sufficient value, when given the anticipated amount of allowed secured and unsecured claims, that the Plan is feasible.

1.  *Ability to Initially Fund Plan*

The Debtors believe that they will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2.  *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments. Again, the Debtors believe that the value of the Real Properties is of sufficient value, when given the anticipated amount of allowed secured and unsecured claims, that the Debtors will be able to make all play payments.

## V. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTORS

As of the Effective Date, except for the Debtors' express obligations respecting distributions herein and claims reserved by the Debtors to be pursued under this Plan, the Debtors and the Reorganized Debtors, and their respective present and former managing members, officers and directors parents, subsidiaries, predecessors, successors, employees, partners, principals, and their respective heirs, executors, administrators, successors, and assigns, are hereby released and discharged from any and all claims, causes of action, demands, liabilities, losses, damages, whether known or unknown, under federal, state or other law, that arose prior to the Effective Date in

connection with any matter arising from or relating to the Debtors, excepts for any acts or omissions resulting from fraud or gross negligence.

On the Effective Date of the Plan, the Debtors shall be discharged from all of its debts and obligations that occurred prior to confirmation, except for those debts and obligations preserved in this Plan or pursuant to separate Order of the Court.

Commencing on the Effective Date, all persons who hold or who have held a claim or interest in the Debtors shall be permanently enjoined from commencing or continuing any action, employment of process, or act to collect, offset, avoid or recover any Claim against the Debtors, except as otherwise provided under the Plan.

### B.    Modification of Plan

The Debtors may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

### C.    Final Decree

Once the estate has been fully administered, as provided in Fed. R. Bankr. P. 3022, the Debtors, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI.    OTHER PLAN PROVISIONS

A.    **Reservation of Rights Under 11 U.S.C. § 1129(b)**. The Debtors expressly reserve the right, pursuant to 11 U.S.C. § 1129(b), to request the Court to confirm the Plan if all of the applicable requirements of 11 U.S.C. § 1129(b) have been met, other than those of 11 U.S.C. § 1129(a)(8).

B.    **Disbursing Agent**. All distributions hereunder shall be made by the Debtors, or such other individual or entity designated by the Debtors at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.

C.    **Post-Petition Interest on Claims**. Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

D.    **Default of Plan**. The Plan provides for specific default provisions. Please carefully read ¶ 3.02 of the Plan for more information regarding the consequences of the Debtors' default of any Plan provision(s).

E.    **Delivery of Distributions and Undeliverable Distributions**. Subject to Fed. R. Bankr. P. 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtors or their agents, or in a letter of transmittal, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for

such holder.  In the event that any distribution to any holder is returned as undeliverable, or in the event that any holder affirmatively indicates that it refuses such payment(s), no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made.  Thereafter, the amount represented by such undeliverable distribution shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtors and their property.

      F.    **Time Bar to Cash Payments**.  Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtors by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such voided check shall be discharged and forever barred.

The Debtors believe that Confirmation of the Plan is in the best interests of the creditors and the Estate because confirmation of the Plan will enable Claimholders to receive higher distributions under the Plan than they would in the event the case were converted to Chapter 7.  Therefore, the Debtors urge all holders of impaired claims to cast a ballot voting in favor of the Plan on or before _____.

**Dated:  September 25, 2018**

                                                    Respectfully submitted,

                                                  Denise Vaknin, as Managing Member of Miami Beverly LLC, 1336 NW 60 LLC, Reverend  LLC, 13300 Alexandria Dr Holdings LLC, and The Holdings At City, LLC

                                       By:    /s/ Ido J. Alexander
                                                 Ido J. Alexander, ESQ.
                                                 Attorney for the Debtors

such holder. In the event that any distribution to any holder is returned as undeliverable, or in the event that any holder affirmatively indicates that it refuses such payment(s), no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made. Thereafter, the amount represented by such undeliverable distribution shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtors and their property.

F.     **Time Bar to Cash Payments.** Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtors by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

The Debtors believe that Confirmation of the Plan is in the best interests of the creditors and the Estate because confirmation of the Plan will enable Claimholders to receive higher distributions under the Plan than they would in the event the case were converted to Chapter 7. Therefore, the Debtors urge all holders of impaired claims to cast a ballot voting in favor of the Plan on or before _____.

**Dated: September 25, 2018**

Respectfully submitted,

*Denise Vaknin*

Denise Vaknin, as Managing Member of Miami Beverly LLC, 1336 NW 60 LLC, Reverend LLC, 13300 Alexandria Dr Holdings LLC, and The Holdings At City, LLC


By:    /s/ Ido J. Alexander
       Ido J. Alexander, ESQ.
       Attorney for the Debtors