UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 18-14506-BKC-LMI |
| MIAMI BEVERLY, LLC | Chapter 11 (Lead Case) |
| | Jointly Administered |
| 1336 NW 60, LLC | Case No. 18-14509-BKC-LMI |
| REVEREND, LLC | Case No. 18-14510-BKC-LMI |
| 13300 ALEXANDRIA DR. HOLDINGS, LLC | Case No. 18-14511-BKC-LMI |
| THE HOLDINGS AT CITY, LLC | Case No. 18-14512-BKC-LMI |
| Debtors. | |

_____/

**JOINT DEBTORS' EXPEDITED MOTION FOR ENTRY OF ORDER (A) AUTHORIZING PRIVATE SALE OF REAL PROPERTIES PURSUANT TO 11 U.S.C. § 363, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (B) APPROVING PURCHASE AND SALE CONTACT AND AUTHORIZATION TO EXECUTE ANY AND ALL DOCUMENTS TO EFFECTUATE CLOSING OF THE SALE; (C) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN APARTMENT LEASE CONTRACTS; (D) APPROVING PAYMENT OF COMPENSATION TO PROPOSED BROKER/AUCTIONEER ASSOCIATED WITH TRANSACTION; (E) SHORTENING REQUIRED NOTICE PERIOD[1]**

> **Expedited Hearing Scheduled On October 4, 2018 Pursuant To
> Court's Oral Ruling On September 26, 2018**

Debtors[2], Miami Beverly LLC, 1336 NW 60 LLC, and The Holdings At City, LLC (the "Debtors"), by counsel, pursuant to 11 U.S.C. §§ 105, 363 and 365, and Bankruptcy Rules 2002(a) and (c)(1), and 6004(a), request the Court enter an order on an expedited basis: (a) authorizing the sale of certain real properties free and clear of all liens, claims, and encumbrances; (b) approving the attached purchase and sale contract and authorization Debtors to execute any and all documents to effectuate closing of the sale; (c) authorizing

---

[1] By filing of this Motion, the Debtors are withdrawing the Motion to Sell [ECF #154].

[2] As detailed in this Motion, two of the jointly administered debtors, 13300 Alexandria Drive Holdings Dr. LLC and the Reverend, LLC are not subject to this Motion to sell. Those Debtors will file separate pleadings with respect to the properties they own.

the Debtors to assume and assign to Purchaser lease contracts; (d) approving payment of compensation to proposed broker/auctioneer associated with the transaction; and (e) shortening period required to notice private sale (the "Motion"). In support of the Motion, Debtors state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O).

2.      Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1409.

3.      The statutory bases for the relief sought herein are sections 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4.      On April 17, 2018, less than five months ago, the Debtors commenced these jointly administered cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtors are operating their business(es) and managing their affairs as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

5.      To date, no trustee, examiner or creditors' committee has been appointed in these cases.

### The Properties

6.      The Debtors assets are compromised of the following real properties (collectively, the "Properties"):

| Name of Debtor/Owner | Property Address | Property Folio Number |
|---|---|---|
| Miami Beverly, LLC | 1250 NW 62 St, Miami, FL 33147-8175 | 01-3114-043-0290 |
| Miami Beverly, LLC | 1231 NW 61 St, Miami, FL 33147-8175 | 01-3114-043-0291 |
| Miami Beverly, LLC | 6040 NW 12 Ave, Miami, FL 33147-8175 | 01-3114-043-0540 |
| 1336 NW 60, LLC | 1335 NW 60 St, Miami, FL 33142-8277 | 01-3114-043-0790 |
| 1336 NW 60, LLC | 1341 NW 60 St, Miami, FL 33142-8277 | 01-3114-043-0800 |
| The Holdings at City, LLC | 1710 NW 1 Ct, Miami, FL 33136-1700 | 01-3125-048-1060 |

7.    In addition to the foregoing Properties, there are two additional related, jointly administered Debtors, who own properties **that are not subject to this Motion**. A separate and subsequent pleading will address the status of those properties. However, for clarification purposes, the following Real Properties are not subject of this Motion:

| Name of Debtor/Owner | Property Address | Property Folio Number |
|---|---|---|
| Reverend, LLC | 6820 NW 1 St, Miami, FL 33147-7475 | 01-3115-005-1240 |
| 13300 Alexandria Dr. Holdings, LLC | 1730 NW 1 Ct, Miami, FL 33136-1748 | 01-3125-048-1050 |

8.    The Properties are apartment buildings, and the Debtors lease certain units in the apartment buildings to third parties (the "Leases").

### Claims Secured and Unsecured

9.    On December 24, 2015, final judgments (the "Judgments") were entered in favor of the City of Miami, Florida and against the Debtors.  The Debtors are analyzing various mechanisms for the consensual reduction of the City of Miami Judgments due to extensive mitigation of the violations.

10.    While the Properties are **not** encumbered by any mortgages, the Properties are encumbered by the Judgments, which have been recorded against the specific entity defendant/ Debtor on the Miami-Dade County Recorder's Office as judgment liens.

11.    Creditors' proof of claim deadline in these jointly administered bankruptcy cases was August 20, 2018.

12.     Attached hereto as **Exhibit "A"** is an analysis of all claims that have either been filed against the Debtors that are subject of this Motion.[3] The total amount secured and unsecured claims (**whether or not allowed**) in the Debtors cases is **$6,207,865** (the "Total Claims").[4]

13.     Additionally, included in Exhibit "B", attached hereto, is the total estimated and known administrative fees for these jointly administered bankruptcy cases in the amount of **$98,877.50** ("Total Administrative Claims")[5].

## The Receivership / Custodianship and Required Sale

14.      During a certain period of time prior to the Petition Date, the Properties were managed by Linda Leali, as court-appointed Receiver (the "Receiver") in the matter styled *City of Miami v. Miami Beverly LLC, et al.* (Case No. 2014-027781-CA-01) (the "Receivership Case").

15.     On June 14, 2018, the Court entered an *Agreed Order Granting, in Part, Amended Motion Pursuant to 11 U.S.C. § 543(d)(1) to Excuse Receiver from Compliance With Turnover Requirements and to Establish Powers and Duties of Receiver Nunc Pro Tunc to Petition Date* [ECF No. 78] (the "543 Order").

16.     The 543 Order set forth the mechanism whereby the Receiver shall remain as a custodian in possession, custody and control of the Properties (the "Custodian"). However, pursuant to the 543 Order, the Custodian was not given authority to liquidate any of the Debtors' assets, with that authority remaining vested in the Debtors. The 543 Order required the Debtors to liquidate the Properties.

---

[3] With exception of duplicative claims filed, there are only judgment lien secured claims by the City of Miami that were filed against the other jointly administered debtors, which are not the subject of this Motion. Those debtors intend to file separate pleadings to address those claims.

[4] The claims exclude those secured claims by the City of Miami that were filed against the debtor entities that are not subject of this Motion: 13300 Alexandria Holdings Dr. LLC and Reverend, LLC.

[5] Administrative Costs excludes retainer amounts held by undersigned counsel.

**Initial Sale Efforts and**
**Threshold Requirements for a Proposed Private Sale**

17.     As such, the Debtors previously filed several motions to sell the Properties,

which were subsequently amended, denied and/or withdrawn (the "Initial Sale Motions").

18.     On September 23, 2018, the Debtors filed their *Expedited Application to*

*Employ* (the "Application") [ECF # 147] Wilbert "Will" Reynoso and Moecker Realty

Auctions, LLC as Broker/Auctioneer (the "Broker").

19.     On September 26, 2018 the Court held a hearing on the last of the Motions to

Sell [ECF # 154] (and the Application), and ordered the Debtors to file motion to approve a

private sale, if such a sale can be entered into, by September 28, 2018.[6]

20.     The Court placed the following **pre-conditions** (the "Pre-Conditions") for

submission of a private sale for approval before the Court:

a)    Escrow of Funds for Remediations - Given the required remediations of the
      Properties, any sale agreement must provide for an escrow of $200,000 in
      additional funds by a proposed buyer. The funds would be in addition to a
      commitment by the buyers to complete the required remediations and repairs of
      the Properties;

b)    Debtors' Equity Contribution for Existing Repairs – Debtors' equity owners must
      commit at least $50,000 in funds to be held in trust by their counsel to fund
      existing repairs, and provide a definitive timetable for such repairs to be made.

c)    Sale Price Must Exceed Claims - The sale price must exceed the aggregate of
      Total Claims, Total Administrative Claims and transactional costs associated
      with sale agreement; and

---

[6] Given the expedited nature of this Motion, at present no order has been entered on the Court's docket.
The Court further ordered that in the event no such private sale is filed, or the sale is not approved at a
subsequent hearing to be held on October 4, 2018, the Court will order the appointment of a Chapter 11
trustee.

d)  <u>Specifics in Contract</u> - The sale contract to be proposed must provide specifics.

21.     Through this Motion, the Debtors respectfully request, among other things, approval of the sale of the Properties free and clear of any liens, claims and encumbrances, and approval of the proposed contract, and authorization to execute all documents necessary to effectuate closing of the transaction.

22.     As such, since the date of the Initial Sale Motions, the Debtors' representatives have communicated with numerous interested parties regarding a highest and best offer, primarily one that is not owner-financed, that is an all cash offer, that a significant deposit has been made, and that can meet and exceed the foregoing Pre-Conditions. As evidenced by the Court records, and explained at various hearings, there are many interested parties, but very few parties that can meet the minimal threshold requirements to enter into the sale transaction.

## THE PROPOSED PRIVATE SALE

### Sale Amount and Arm Length Transaction

23.     Thereafter, on September 28, 2018, the Debtors received an offer to purchase the Properties (in bulk) from 101 Apartments Holdings, LLC (the "Purchaser") in the amount of $**6,550,000**.  The contemplated transaction is an arms-length transaction, and neither the Purchaser, nor any of its member(s), are insiders of any of the Debtors. Further, no separate transaction has been entered into by and between the Purchaser and the principals/insiders of the Debtors. The Purchaser, as one of the terms of the transaction has agreed to execute an affidavit attesting to the same (the "Affidavit"). A copy of the Affidavit will be filed with the Court prior to the hearing on this Motion on October 4, 2018.

### Background on the Purchaser's Principal

24.     The Affidavit will further provide background on the principal and sole owner of the Purchaser, Mr. Peter Polities. Mr. Polities is the owner of Mr. Greens Produce, a

reputable produce distribution company in the region. The Affidavit will outline to the Court the degree of Mr. Polities' commitment to the remediations of the Properties and otherwise to the community-at-large. Mr. Polities has extensive involvement with the City of Miami and City of Miami Beach. He has been recognized for his efforts in the community, including his treatment of his own employees, many of whom reside in the neighborhood in which the Properties are located, as well as his assistance to low income elderly residents of the City of Miami during Hurricane Irma. In fact, Mr. Polities was recognized by the City for his efforts during that storm for which he received a key to the City and a day in the calendar year was named after his company as "Mr. Green's Day." Mr. Polities has expressed to Debtors his vision for the Properties: rehabilitation of the Properties such that they can be used as affordable housing for some of his employees.

### The Terms of the Proposed Private Sale Contract

25. The offer from the Purchaser is the highest and **best** offer that the Debtors have received, which meets all the Pre-Conditions or otherwise, and it is in the Debtors' principals' experience in buying and selling real properties, the offer is well in line with current market prices.

26. As such, the Debtors and the Purchaser have agreed to the terms contained in the "Commercial Contract" (along with addendums) attached hereto as **Exhibit "C"** (the "Contract"), the primary material terms of which are as follows:

    a. **Purchase Price**: $6,550,000 (the "Purchase Price")[7].

    b. **Deposit:** $1,000,000[8].

    c. **Cash at Closing:** $5,500,000.

---

[7] The Addendum to Contract apportions the Purchase Price amongst the various Properties.

[8] The deposit is presently held by the escrow agent for the transaction, a reputable real estate board certified attorney, Mr. Albert D. Rey of Albert D. Rey, P.A.

    d. **<u>Terms</u>**: As-is, where-is, and free and clear of all liens, claims and encumbrances.

    e. **<u>Closing Date</u>**: 20 days following entry of an order granting this Motion.

    f. **<u>Commission</u>**: No Commission. However, the Debtors do seek to compensate the Broker, Mr. Reynoso and Moecker Realty Auctions for their assistance in connection with this transaction, and seek authorization of payment of **$5,000** to Moecker at closing.

    g. **<u>Escrow Amount for Remediation:</u>** $300,000 above and beyond the Purchase Price to be deposited and used for remediation of the Properties. Nonetheless, the Purchaser has further agreed to make available any and all additional funds above the foregoing escrowed amounts that are necessary for the remediation of the Properties. The Purchaser will endeavor to work with the City of Miami to repair and resolve any and all outstanding violations in existence after the closing.

    h. **<u>Financing:</u>** None

    i. **<u>Assignment of Leases:</u>** Purchaser shall assume any and all apartment leases in existence, none of which shall exceed 1 year, and shall otherwise work with the Custodian to facilitate the transfer of all available security and/or last month deposits.

    j. **<u>Operations During Interim Period.</u>** During interim period between approval of the Contract and Closing, Custodian may continue operating the Properties and enter into any lease agreement in normal course of business under market lease terms that no more than 12 months in term. Turnover of the Properties shall be done in cooperation with the Custodian, who is necessary to facilitate the transfer of the Properties to the Purchaser. Equity shall continue with the repairs to the properties as set forth in the weekly schedule of repairs filed separately.

    k. **<u>Subject to Bankruptcy Court approval</u>**

27.    The Purchaser has already deposited $1,000,000 with the escrow agent and provided the Debtors proof of funds sufficient to close the transaction.

### Equity Owner's Commitment of Funds and Schedule

28.    Contemporaneously with the filing of this Motion, equity owners of the Debtors have filed a notice indicating $50,000 has been deposited with their counsel, and including a weekly schedule of repairs [DE #176].

---

**The Net Proceed to Estate Exceed All Transaction Costs,
Claims Filed, and Administrative Claims**

29.     The Debtors submit that the purchase price exceeds the aggregate of the Total Claims, Total Administrative Claims, and transactional costs.

30.     Included in **Exhibit "B"** is an analysis demonstrating the following:

    a)  Purchase Price:                         $6,550,000

    b)  Estimated Transactional Costs:       ($83,775.00)

    c)  Cash Available To Debtors:         **$6,466,225.00**

    d)  Total of Claims and Administrative Expenses: ($6,306,742.66)

    e)  Net Amount Available[9] to Equity:     **$159,482.34**

31.     Accordingly, the proposed Contract meets the Pre-Condition set by the Court.

<u>**RELIEF SOUGHT**</u>

**The Sale Should Be Approved
Pursuant to 11 U.S.C. §§ 363(b), (f)(3) and (m)**

32.     The Debtors request that the Court approve the sale of the Properties to the Purchaser, pursuant to 11 U.S.C. § 363(f), free and clear of any and all liens, claims and encumbrances, upon the terms set forth above.  The Debtors also request that the Court authorize the Debtors to enter into the Contract and approve the payment of Broker as outlined herein.

33.     Pursuant to 11 U.S.C. § 363(b), "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

34.     Additionally, 11 U.S.C. § 363(f) permits the Debtors to "…sell property under subsection (b) … of this section free and clear of any interest in such property of an entity other than the estate, only if –

---

[9] Before Adjudication of Claims.

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) **such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property** [emphasis added];

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest".

35.    With regards to the City of Miami Claim, the sale of the Properties is greater than the aggregate value of all liens on such Properties, such that 11 U.S.C. 363(f)(3) is satisfied, as demonstrated below:

| Name of Debtor/Owner | Judgment Amounts ($)[10] | Purchase Amount ($) |
|---|---|---|
| Miami Beverly, LLC | | $3,028,567 |
| Miami Beverly, LLC | $163,567.00 | |
| Miami Beverly, LLC | | |
| 1336 NW 60, LLC | $461,577.84 | $823,164 |
| 1336 NW 60, LLC | | |
| The Holdings at City, LLC | $598,632.81 | $2,698,269 |
| Totals | $1,223,777.65 | $6,550,000 |

36.    In addition, all Pre-Conditions set by the Court have been satisfied, including without limitation the Escrow amount, the amount available to Equity holders after payment of all transactional costs and claims, the Contract is sufficient in details, and the principal/insiders of the Debtors have committed the necessary funds for repairs with the required schedule.

37.    For all of the above reasons, the Court should authorize the sale of the Properties, free and clear of any and all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds.

38.    Furthermore, the Debtors request that at closing, the Purchaser is deemed to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m), provided that the

---

[10] Amount stated as of date of entry of the final judgment.

Purchaser has complied with all requirements of the Contract. Pursuant to 11 U.S.C. § 363(m), the reversal or modification on appeal of a transaction authorized under Section 363(b) of the Bankruptcy Code does not affect the validity of the sale to an entity that acquired the property in good faith.  The sale is arms-length to a purchaser that will attest through the Affidavit the he is acquiring the Properties in good faith.

39.     The Debtors, exercising their business judgment, believe that the sale of the Properties to the Purchaser is in the best interest of the bankruptcy estate.

40.     The Debtors request that the Court provide the Debtors with the authority to close the sale, disburse the sales proceeds and execute any and all documents necessary to consummate the closing.

### Request to Waive the 14-Day Stay

41.     In order to complete the Sale in the most expeditious manner, the Debtors request that the Court waive the 14-day stay as under Bankruptcy Rule 6004(h), which provides that "[a]n order of the court authorizing the use, sale or lease of property ... is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise.*" (emphasis added).

42.     The Debtors request that the Court waive the stay period under Bankruptcy Rule 6004(h), so that the parties can comply with the scheduled closing date.

### Debtors Request Authority to Assume and Assign
### To Purchaser All Apartment Leases Associated with the Properties

43.     Pursuant to 11 U.S.C. §§ 363(b) and 365(a), the Debtors request this Court's authority to execute any and all documents to assume and assign to Purchaser all apartment leases associated with the Properties.[11]

---

[11] The Debtors will file a supplemental notice with the list of current leases.

**Notice of Sale Should Be Shortened**

44.    Pursuant to Bankruptcy Rules 2002(a), 6004 and Local Rule 2002-1(K) and 6004(1)(A), parties-in-interest should be provided with at least twenty-one day notice of the sale of the Properties. However, such notice may be shortened for **cause shown**.

45.    In light of this Court's shortened timeline for submission of the instant Motion (by September 28, 2018, with hearing on approval by October 4, 2018), the Debtors request this Court shortened the notice period requirements and find that that such notice constitutes good and sufficient notice of the Motion, and that no further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an Order:

(a)    granting the Motion;

(b)    authorizing the sale of the Properties to Purchaser, free and clear of all liens, claims, and encumbrances;

(c)     authorizing the Debtors through equity to execute any and all documents necessary to effectuate the closing including the deed and related documents;

(d)    approving the buyer as a good faith purchaser

(e)    approving the Contract and authorizing the Debtors to execute all associated documents to effectuate closing;

(f)    authorizing the Debtors to assume and assign to purchasers all apartment lease agreements associated with the Properties, pursuant to the Contract;

(g)    approving the compensation and payment to Broker in the amount of $5,000.00;

(h)    shortening the notice period;

(i)    waving the 14 day stay; and

(i)      granting any and all such further relief as this Court deems appropriate under the circumstances.

Dated: September 28, 2018.

LEIDERMAN SHELOMITH ALEXANDER
+ SOMODEVILLA, PLLC
Attorneys for the Debtors
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By:_____/s/_____
        IDO J. ALEXANDER
        Florida Bar No. 51842
        ija@lsaslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on September 28, 2018 to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference.

By:_____/s/_____
        Ido J. Alexander

**EXHIBIT "A"**
**(Claims Analysis)**

| | | Filed Claim Amount | Comments |
|---|---|---|---|
| **Miami Beverly, LLC** | | | |
| Leali, as Receiver | $ | 14,070.00 | POC # 9 |
| Linda Leali, Individual capacity | Unliquidated | | POC # 10 |
| Linda Leali, P.A. | Unliquidated | | POC #11 & 12 |
| Messana, P.A. | $ | 38,794.00 | POC # 8 |
| Tenants (Gaynisha Williams, Nathaneil Mars, Lakeisha Chatfield, Shannon Daniels, Lakeisha Chatfield on Behalf of T.C. | $ | 1,588,205.00 | POC #3,4,5,6, & #7 |
| Miami Development & Holdings, LLC | $ | 3,144,595.00 | POC #2 |
| Miami Dade Tax Collector | $ | 37,731.45 | POC # 1 |
| City of Miami Judgment (12/24/2015) | $ | 163,567.00 | POC # 13 & 14 |
| **Subtotal** | **$** | **4,986,962.45** | |
| | | | |
| **1336 NW 60 LLC** | | | |
| Miami Development & Holdings, LLC | $ | - | Duplication of Claim |
| Linda Leali, Individual capacity | Unliquidated | | Duplication of Claim |
| Linda Leali, P.A. | Unliquidated | | Duplication of Claim |
| City of Miami Judgment (12/24/2015) | $ | 461,577.84 | |
| **Subtotal** | **$** | **461,577.84** | |
| | | | |
| **The Holdings at City, LLC** | | | |
| Miami Development | $ | - | Duplication of Claim |
| Linda Leali, Individual capacity | n/a | | Duplication of Claim |
| Linda Leali, P.A. | Unliquidated | | Duplication of Claim |
| City of Miami Judgment (12/24/2015) | $ | 598,632.81 | |
| **Subtotal** | **$** | **598,632.81** | |
| | | | |
| City of Miami Judgment - Interest (as of 9/27/2018) | $ | 160,692.06 | |
| | | | |
| **Grand Total of Claims** | **$** | **6,207,865.16** | |

**EXHIBIT "B"**
**(Purchase Price, Payment of Claims Analysis and**
**Administrative Fees)**

| | Amounts | | Comment |
|---|---|---|---|
| Sale Price | $ | 6,550,000.00 | |
| | | | |
| **Estimated Closing Costs** | | | |
| Stamps | $ | 68,775.00 | |
| Misc Costs (Est.) | $ | 10,000.00 | |
| Broker/Auctioneer Fees | $ | 5,000.00 | |
| **Subtotal of Costs** | $ | **83,775.00** | |
| | | | |
| **Cash Available To Selling Estates** | $ | 6,466,225.00 | |
| | | | |
| **Total Gross Claims Against Each Estate** | | | |
| Beverly | $ | 4,986,962.45 | |
| 1336 NW 60, LLC | $ | 461,577.84 | |
| Holdings At City , LLC | $ | 598,632.81 | |
| | | | |
| Estimated Interest on Applicable City Judgments (as of 9/27) | $ | 160,692.06 | |
| | | | |
| **Total Gross Claims Against Selling Estate** | $ | **6,207,865.16** | |
| | | | |
| **Chapter 11 Administrative Expenses** | | | Estimated Fees $120,000, less $56,122.5 held in trust. |
| | | | |
| Estimated Admin Profesional 11 Claims (beyond retainer a | $ | 63,877.50 | |
| Expenses of Receiver and Counsel in Ordinary Course | $ | 35,000.00 | |
| US Trustee Fees | Unkown | | |
| **Subtotal Administrative Expenses (Est.)** | $ | **98,877.50** | |
| | | | |
| **Total of Claims and Administrative Expenses** | $ | 6,306,742.66 | |
| | | | |
| **Net Amount Available to Equity Holders (before Adjudication of claims)** | $ | **159,482.34** | |

**EXHIBIT "C"**
**(Commercial Contract with Addendum)**

**Commercial Contract**                                                FloridaRealtors·

1   **1. PARTIES AND PROPERTY:** _____ 101 Apartments Holding, LLC _____ ("Buyer")

2   agrees to buy and _____ Miami Beverly, LLC; The Holdings at City, LLC; and 1336 NW 60 LLC _____ ("Seller")

3   agrees to sell the property at:

4   Street Address: See Exhibit A _____

5   _____

6   Legal Description: See Exhibit A _____

7   _____

8   and the following Personal Property: All personalty, appliances, and Fixtures located in or on the premises described in

9   Exhibit A; all in AS-IS Condition.

10  (all collectively referred to as the "Property") on the terms and conditions set forth below.

11  **2. PURCHASE PRICE:**                                                  $ 6,550,000.00

12      (a) Deposit held in escrow by: _____ The Law Firm of Albert D. Rey, P.A.     $ 1,000,000.00
13                                          ("Escrow Agent") (checks are subject to actual and final collection)

14  Escrow Agent's address: 12955 SW 42nd Street, Suite 6, Miami Phone: 305-597-0440

15      (b) Additional deposit to be made to Escrow Agent
16      ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
17      ☐ within ____ days after Effective Date _____ $ _____

18      (c) Additional deposit to be made to Escrow Agent
19      ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
20      ☐ within ____ days after Effective Date                          $ _____

21      (d) Total financing (see Paragraph 5) _____            $ _____

22      (e) Other _____                                        $ _____

23      (f) All deposits will be credited to the purchase price at closing.
24      Balance to close, subject to adjustments and prorations, to be paid
25      via wire transfer.                                               $ 5,550,000.00

26  For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of
27  Buyer's written notice of acceptability.

28  **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
29  **and Buyer** and an executed copy delivered to all parties on or before _____ September 28, 2018 _____, this offer
30  will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be
31  3 days from the date the counter offer is delivered. The **"Effective Date" of this Contract is the date on which the**
32  **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer or**
33  _____. Calendar days will be used when computing time periods, except time periods of 5
34  days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal
35  holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next
36  business day. **Time is of the essence in this Contract.**

37  **4. CLOSING DATE AND LOCATION:**
38      (a) Closing Date: This transaction will be closed on _____ See paragraph 23 _____ (Closing Date), unless
39      specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods
40      including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-5   Rev 9/17
Serial#: 083815-500183-8149835

©2017 Florida Realtors®

formsimplicity

Scanned with CamScanner

91 **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
92 an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

93 **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
94 of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
95 **Buyer** delivers proper written notice and **Seller** cures the defects within _____ days from receipt of the notice
96 ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97 Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98 scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
99 cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
100 from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
101 title subject to existing defects and close the transaction without reduction in purchase price.

102 **(c) Survey:** (check applicable provisions below)
103 [X] **Seller** will, within ___5___ days from Effective Date, deliver to **Buyer** copies of prior surveys,
104 plans, specifications, and engineering documents, if any, and the following documents relevant to this
105 transaction:
106 _____
107 prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
108 transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
109 date this Contract is terminated.
110 [X] **Buyer** will, at [ ] **Seller's** [X] **Buyer's** expense and within the time period allowed to deliver and examine
111 title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112 encroachments on the Property or that the improvements encroach on the lands of another, [ ] **Buyer** will
113 accept the Property with existing encroachments [X] such encroachments will constitute a title defect to be
114 cured within the Curative Period.

115 **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

116 **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
117 ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
118 makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119 changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
120 refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121 condition existing as of the end of Due Diligence period, the cost of which is not to exceed $ _____ (1.5% of
122 the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
123 defects in the Property. (Check (a) or (b))

124 [X] **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125 condition.

126 [ ] **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within _____ days from Effective Date ("Due
127 Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion. During the
128 term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
129 **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
130 environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131 regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132 state and regional growth management and comprehensive land use plans; availability of permits, government
133 approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134 water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
135 **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
136 is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
137 its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
138 Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139 notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
140 the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
141 losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142 liability to any person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer**
143 will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144 **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

CC-5  Rev 9/17
Serial#: 083618-500153-8149638                                                                ©2017 Florida Realtors®
                                                                                                   formsimplicity

Scanned with CamScanner

41   on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42   the insurance underwriting review is lifted.

43   **(b) Location:** Closing will take place in ___Miami-Dade___ County, Florida. (If left blank, closing will take place in the
44   county where the property is located.) Closing may be conducted by mail or electronic means.

45   ~~**5. THIRD PARTY FINANCING:**~~

46   ~~**BUYER'S OBLIGATION:** On or before _____ days (5 days if left blank) after Effective Date, **Buyer** will apply for third~~
47   ~~party financing in an amount not to exceed _____% of the purchase price or $_____, with a fixed~~
48   ~~interest rate not to exceed _____% per year with an initial variable interest rate not to exceed _____%, with points or~~
49   ~~commitment or loan fees not to exceed _____% of the principal amount, for a term of _____ years, and amortized~~
50   ~~over _____ years, with additional terms as follows:~~

51   ~~_____~~
52   ~~**Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any~~
53   ~~lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within _____ days (45 days if left~~
54   ~~blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close~~
55   ~~the loan. **Buyer** will keep **Seller** and **Broker** fully informed about loan application status and authorizes the mortgage~~
56   ~~broker and lender to disclose all such information to **Seller** and **Broker**. **Buyer** will notify **Seller** immediately upon~~
57   ~~obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable~~
58   ~~diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within _____ days (3 days if left blank)~~
59   ~~deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.~~
60   ~~If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.~~
61   ~~Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of~~
62   ~~those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**~~
63   ~~has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and~~
64   ~~thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or~~
65   ~~before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both~~
66   ~~parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving~~
67   ~~the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use~~
68   ~~good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction~~
69   ~~does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms~~
70   ~~and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-~~
71   ~~approval letter nor a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.~~

72   **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty
73   deed ☐ special warranty deed ☐ other _____, free of liens, easements and
74   encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75   restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76   matters to which title will be subject) NONE _____

77   _____ ;

78   provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79   Property as _____Rental Apartments_____ .

80   **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81   and pay for the title search and closing services. **Seller** will, at (check one) ☐ **Seller's** ☒ **Buyer's** expense and
82   ~~within _____ days after Effective Date or~~ at least __15__ days before Closing Date deliver to **Buyer** (check one)
83   ☒ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84   **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85   price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86   **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☐ (ii.) an
87   abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88   However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89   insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90   exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

CC-5   Rev. 9/17
Serial#: 083815-800163-6149835

©2017 Florida Realtors®

formsimplicity

**Scanned with CamScanner**

with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the requirement.

**10. ESCROW AGENT:** **Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive, deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs in favor of the prevailing party.

**11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

**12. FORCE MAJEURE:** **Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

**13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit will be returned in accordance with applicable Florida Laws and regulations.

**14. DEFAULT:**
(a) In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the brokerage fee.
(b) In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1) retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1) terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without waiving any remedy for **Buyer's** default.

~~**15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the~~ prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable ~~attorneys' fees, costs, and expenses.~~

**16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice, document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker) representing a party will be as effective as if given by or delivered to that party.

Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

CC-5    Rev 9/17

Serial#: 063615-600153-8149638

©2017 Florida Realtors®

formsimplicity

Scanned with CamScanner

145 Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146 Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147 result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148 **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149 **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151 to ensure that all Property is on the premises.

152 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153 business conducted on the Property in the manner operated prior to Contract and will take no action that would
154 adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155 vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☒ only with
156 **Buyer's** consent ☐ without **Buyer's** consent.

157 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158 the norms where the Property is located.

159 **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160 closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161 mailboxes, and security systems.

162 **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163 statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164 recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165 prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166 **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167 service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168 service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169 contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171 documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
172 applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173 **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174 change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175 **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176 deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177 appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178 requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
179 mortgages and notes, security agreements, and financing statements.

180 **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181 payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182 premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186 **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187 will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189 beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190 Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192 completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194 does not apply to condominium association special assessments.

195 **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196 **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

Buyer (____)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages

CC-5   Rev 9/17
Serial# 083815-000153-8149635

©2017 Florida Realtors®

formsimplicity

Scanned with CamScanner

302  who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
303  ☐ Seller's Broker ☐ Seller ☐ Buyer ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
304
305  (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
306  inquiries, introductions, consultations, and negotiations resulting in this transaction. Seller and Buyer agree to
307  indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
308  reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
309  inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
310  Paragraph 10, (3) any duty accepted by Broker at the request of Seller or Buyer, which is beyond the scope of
311  services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
312  expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of Seller or Buyer.

313  **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
314  this Contract):
315  ☐ (A) Arbitration                    ☐ (E) Seller Warranty                ☐ (I) Existing Mortgage
316  ☐ (B) Section 1031 Exchange          ☐ (F) Coastal Construction Control Li ☐ (J) Buyer's Attorney Approval
317  ☐ (C) Property Inspection and Repair ☐ (G) Flood Area Hazard Zone         ☐ (K) Seller's Attorney Approval
318  ☐ (D) Seller Representations         ☐ (H) Seller Financing               ☒ Other _____ Exhibit A _____

319  **23. ADDITIONAL TERMS:**
320  Notwithstanding anything herein or on any addenda to the contrary, the following terms control:
321  A.   The Buyer agrees and acknowledges that no financing contingency shall govern this agreement. This is an ALL
322  CASH transaction without any financing requirement for closing. Buyer shall provide proof of available funds for
323  closing.
324  B.      The closing, settlement and title agent shall be The Law Firm of Albert D. Rey, P.A.  12955 SW 42nd Street,
325  Suite 6, Miami, Florida 33175; 305-597-0440; adrey@bellsouth.net.
326  C.      Property shall be delivered at closing free and clear of any and all mortgages, liens, claims, encumbrances,
327  any and all of which shall be paid in full or otherwise satisfied or released at or before closing.
328  D.      The Property shall be sold and transferred free and clear of any liens, encumbrances or other interests,
329  pursuant to Section 363(f) and (m) of the bankruptcy code, and pursuant to bankruptcy court order.
330  E.      To the extent applicable, any and All HERO, PACE or YGRENE or similar loan, if any, shall be paid off by
331  Seller and fully discharged, Satisfied and released from the property at or before closing.
332  F.      Buyer may take title at closing to each separate property identified in Exhibit A in a  Florida Land Trust or other
333  entity to be created prior to closing.
334  H.   This Contract is subject to Court Approval for so long as the properties are subject to the jurisdiction of the
335  Bankruptcy Court.
336  G.   The Closing Shall take place on or before 20 days following the entry of an Order Approving the Sale of the
337  Properties identified in Exhibit A to Buyer, in AS-IS Where Is condition, each being free and clear of any and all liens,
338  claims and encumbrances.  The form of the order must be acceptable to the title agent and underwriter for Old
339  Republic National Title Insurance Company.  Alternately, if the Bankruptcy case(s) is/are dismissed, the Closing shall
340  occur 30 days following the entry of the order dismissing the last Bankruptcy case affecting any of the properties
341  identified in Exhibit A.

342  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
343  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
344  **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
345  **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
346  **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
347  **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-5   Rev 9/17                                                                      ©2017 Florida Realtors®
Serial: 083615-800153-8149635

formsimplicity

Scanned with CamScanner

**17. DISCLOSURES:**

(a) **Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

(b) **Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

(c) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

(d) **Energy-Efficiency Rating Information:** Buyer acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

(a) If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any, and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

(b) If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms "**Buyer**," "**Seller**" and "**Broker**" may be singular or plural. This Contract is binding upon **Buyer**, **Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

(a) **Seller's Broker:** _____ NONE _____
(Company Name)                (Licensee)
_____
(Address, Telephone, Fax, E-mail)
who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

(b) **Buyer's Broker:** _____ NONE _____
(Company Name)                (Licensee)
_____
(Address, Telephone, Fax, E-mail)

Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-5  Rev 9/17
©2017 Florida Realtors®
formsimplicity

**Addendum to Contract**

 FloridaRealtors®

Addendum No. ___1___ to the Contract with the Effective Date of ___September 28, 2018___ between

_____ Miami Beverly, LLC; The Holdings at City, LLC; and 1336 NW 60 LLC _____ (Seller)

and _____ 101 Apartments Holding, LLC _____ (Buyer)

concerning the property described as: See Exhibit A _____

_____

(the "Contract"). Seller and Buyer make the following terms and conditions part of the Contract:

1. Buyer has agreed to commit necessary funds to repair the properties such that they have committed an additional $300,000 above the Purchase Price to be escrowed by the escrow agent and used by the Buyers, post-closing, to make necessary repairs and remediate the properties. Further, the Buyer submits and agrees to make available any and all additional funds (above the escrowed $300,000) that are necessary for the remediation of the Properties. The Buyer will endeavor to work with the City of Miami to repair and resolve any and all outstanding violations in existence after the Closing.

2. The Real and Personal Property is sold strictly in its "as is/where is" ("As Is") condition, and subject to Bankruptcy Court Approval (the "Approval") in the bankruptcy case styled In re Miami Beverly, LLC, et al. and its related jointly administered case, lead case No. 18-14506 (the "Cases"), which is pending in the United States Bankruptcy Court Southern District of Florida, Miami Division. Buyer acknowledges and agrees that any dispute concerning the Contract and this addendum will be resolved by the Bankruptcy.

3. If the Bankruptcy Cases are subject to the appointment of a Chapter 11 Trustee, the contract shall remain in effect for an additional 30 days so as to provide the Trustee sufficient time to evaluate and /or determine whether to proceed with the Contract on behalf of the Debtors.

4. Buyer shall assume, and Seller shall assign any and all residential leases for the properties, none of which are for a term in excess of 1 year. The Sellers in coordination with the Court appointed Custodian, shall facilitate the transfer of all available security and/or last month rent deposits.

5. Buyer acknowledges that the properties are managed by a Court appointed Custodian pursuant to State Court Receivership Order adopted by the Bankruptcy Court order in the Cases. During the interim period before Closing, the Custodian may continue operating the properties and enter into any lease agreement in the normal course of business under market lease terms that are no more than 12 months in term. Turnover of the Properties shall be done in coordination with the Custodian, who is necessary to facilitate the transfer of the Properties to the Buyer. The Custodian and Receiver shall be discharged at time of turnover of possession to Buyer.

6. Buyer will sign an affidavit that they have no connection whatsoever to the Debtors, and/or any of the equity owners of the Debtors, or otherwise, have not made any separate transactions in connection with the sale of the Properties. They are otherwise arm's length buyers in good faith of the Properties.

7. Attorneys fees and costs shall be borne by each side without claims for attorneys, or to the extent any claims for attorneys fees are made in connection with a dispute over the contract, the buyer agrees that such dispute shall be resolved by the Bankruptcy Court.

8. Unless the Bankruptcy case(s) are dismissed, this Contract shall be null and void in the absence of Bankruptcy Court approval, and at Buyer's demand Buyer's deposit shall be immediately refunded without further order of the Court.

9. The terms of this addendum and those Contained in Paragraph 23 of the form contract shall be of equal dignity and shall where in conflict with the terms and/or clauses of form Contract attached hereto shall supersede the Contract terms and/or clauses.

10. The specific prices for each property being purchased and sold herein, are set forth in Exhibit A.

Buyer: _____    Date: _9/28/18'_

Buyer: _____    Date: _____

Seller: __Denise Aquin_____    Date: _9-28-2018_

Seller: _____    Date: _____

ACSP-4   Rev 6/17
Serial#: 047920-600153-8150409

©2017 Florida Realtors®
formsimplicity

Scanned with CamScanner

348 ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL
349 REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER
350 REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF
351 THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND
352 GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND
353 FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.

354 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357 to do so.

358 _____  Date: 9/28/18
(Signature of Buyer)

359 _____  Tax ID No.: _____
(Typed or Printed Name of Buyer)

360 Title: _____  Telephone: _____

361 _____  Date: _____
(Signature of Buyer)

362 _____  Tax ID No.: _____
(Typed or Printed Name of Buyer)

363 Title: _____  Telephone: _____

364 Buyer's Address for purpose of notice _____

365 Facsimile: _____  Email: _____

366 Denise Vaknin  Date: 9-28-2018
(Signature of Seller)

367 Denise Vaknin  Tax ID No.: _____
(Typed or Printed Name of Seller)

368 Title: Manager  Telephone: _____

369 _____  Date: _____
(Signature of Seller)

370 _____  Tax ID No.: _____
(Typed or Printed Name of Seller)

371 Title: _____  Telephone: _____

372 Seller's Address for purpose of notice: _____

373 Facsimile: _____  Email: _____

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5  Rev 9/17  ©2017 Florida Realtors®
Serial# 083615-800183-8149635

formsimplicity

Scanned with CamScanner

# Exhibit A

Current Owner: Miami Beverly, LLC
Property Address: 1250 NW 62 Street, Miami, FL 33147
Folio:01-3114-043-0290
Legal: Lots 13, 14, 15 and 16, less the North 10 Feet thereof, in Block 2, of ORCHARD VILLA
EXTENSION, according to the Plat thereof, as recorded in Plat Book 17, Page 55, of the Public
Records of Miami-Dade County, Florida.
Price: $1,644,271.00

Current Owner: Miami Beverly, LLC
Property Address: 1231 NW 61 Street, Miami, FL 33147
Folio: 01-3114-043-0291
Legal: Lots 31 and 32, in Block 2, of ORCHARD VILLA EXTENSION, according to the Plat thereof,
as recorded in Plat Book 17, Page 55, of the Public Records of Miami-Dade County, Florida.
Price: $643,694.00

Current Owner: Miami Beverly, LLC
Property Address: 6040 NW 12 Ave, Miami, FL 33127
Folio: 01-3114-043-0540
Legal: Lots 13, 14, 15 and 16, Block 3, ORCHARD VILLA EXTENSION, according to the Plat
thereof, as recorded in Plat Book 17, Page 55, of the Public Records of Miami-Dade County,
Florida.
Price: $740,602.00

Current Owner: 1336 NW 60 LLC
Property Address: 1335 NW 60 St, Miami, FL 33142
Folio: 01-3114-043-0790
Legal: Lot 16, Block 4, ORCHARD VILLA EXTENSION, according to the Plat thereof as filed in Plat
Book 17, Page 55, of the Public Records of Miami-Dade County, Florida.
Price: $268,606.00

Current Owner: 1336 NW 60 LLC
Property Address: 1341 NW 60 St, Miami, FL 33142
Folio: 01-3114-043-0800
Legal: Lot 17, Block 4, ORCHARD VILLA EXTENSION, according to the Plat thereof as filed in Plat
Book 17, Page 55, of the Public Records of Miami-Dade County, Florida.
Price: $554,558.00

Current Owner: The Holdings at City, LLC
Property Address: 1710 NW 1 Ct, Miami, FL 33136
Folio: 01-3125-048-1060
Legal: Lots 9 and 12, Block 27 & E ½ OF ALLEY W & ADJ CLOSED PER ORD 13492, of JOHNSON &
WADDELL'S ADDITION TO THE CITY OF MIAMI, according to the Plat thereof, as recorded in Plat
Book B, Page 53, Public Records of Miami- Dade County, Florida.
Price: $2,698,269.00



Scanned with CamScanner