# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# Miami Division

| | |
|---|---|
| IN RE: | CASE NO. 18-14506-BKC-LMI |
| | Chapter 11 (Lead Case) |
| Miami Beverly, LLC, | |
| | Jointly Administered |
| 1336 NW 60, LLC | Case No. 18-14509-BKC-LMI |
| Reverend, LLC | Case No. 18-14510-BKC-LMI |
| 13300 Alexandria Dr. Holdings, LLC | Case No. 18-14511-BKC-LMI |
| The Holdings at City, LLC | Case No. 18-14512-BKC-LMI |
| Debtor. _____ / | |

## RECEIVER'S RESPONSE IN CONNECTION WITH SETTLEMENT AGREEMENT BETWEEN MIAMI BEVERLY, ET AL AND THE CITY OF MIAMI

Linda Leali, the state court-appointed receiver excused from turnover (the "**Receiver**") in the matter styled *City of Miami v. Miami Beverly LLC, et al.* (Case No. 2014-027781-CA-01) in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "**State Court**"), by counsel, hereby files this **Receiver's Response In Connection with The Settlement Agreement Between Miami Beverly, Et. Al. and The City Of Miami.** In support of this Motion, Receiver states the following:

### PRELIMINARY STATEMENT

The City of Miami ("**The City**") and Debtors Miami Beverly LLC, 1336 NW 60 LLC, Reverend LLC, 13300 Alexandria Dr. Holdings LLC, and The Holdings At City, LLC (the "**Debtors**") entered into a Settlement Agreement (the "**Agreement**") on December 12, 2018. The Receiver does not object to the Agreement; rather, the Receiver is fully supportive of the Debtor's efforts to amicably conclude its litigation with The City and, consequently, move a step

closer to terminating the Receivership. However, the Receiver is concerned with several aspects of the Agreement, wishes to make the Court aware of the reasons for her apprehension, and to suggest some common-sense procedures to ease the transition between Receiver and Debtor. Specifically, the Receiver is concerned:

I. that the Agreement does not address her release and discharge;

II. that the Agreement does not address the status of her bond;

III. that the Debtors' timetable is unrealistic, thereby creating uncertainty, and does not provide for a mechanism to ensure payment of all receivership expenses, and

IV. that the Agreement's indemnity provisions are inequitable.

Most of the Receiver's concerns are easily remedied and had the Receiver been consulted prior to the Debtor and The City's entry into the Agreement would likely have already been addressed. The Receiver will continue to work with the Debtors and the City to eliminate surprises and achieve a smooth transition in terminating this over three and a half year Receivership.

## DISCUSSION

I. **The Agreement Does Not Address the Receiver's Release and Discharge.**

1. The Receivership Order (the "**Order**") remains in effect until the Receiver is released and discharged from her obligations by the State Court. See the **Agreed Order Granting, In Part, Amended Motion Pursuant To 11 U.S.C. § 543(D)(1) To Excuse Receiver From Compliance With Turnover Requirement And To Establish Powers And Duties Of**

**Receiver *Nunc Pro Tunc* To Petition Date** (ECF No. #78) and the **Order Appointing Receiver**, filed June 10, 2015, attached as Exhibit "A".[1]

2. The Agreement does not reference releasing or discharging the Receiver.

3. If the Receiver is not released and discharged from her obligations, the Receiver may be subject to personal liability for debts of the Receivership. This may be true despite the City not having contractually agreed to terminate the Receivership.

4. If, as the Agreement states, the Receiver has performed her obligations to the extent that the receivership can be terminated, the City and the Debtor should have no objections to the Receiver's release and discharge by both this Court and the State Court.

5. The Receiver therefore requests that the Agreement not be effective until the Receiver's release and discharge are confirmed by both this Court and the State Court.[2]

II. **The Agreement Does Not Address the Receiver's Bond.**

6. Pursuant to the Order, the Receiver was required to post a bond in the initial amount of $30,000. This bond was later discharged, subject to a new bond of $100,000. *See* ECF No. 97.

7. The Agreement does not reference the Receiver's bond.

8. If the Receiver's bond is not extinguished, the Receiver may be subject to personal liability. As this matter has come on an emergency basis, there has been insufficient time to determine what those liabilities are or might be. Additionally, there may be a partial refund of the bond premium.

---

[1] The Order has been amended several times. For ease of reference only the original version is appended to this Response.
[2] As a federal court ought not to be determining a non-justiciable question, the Receiver submits that that procedure could be as simple as this Court granting stay relief to address the issue with the State Court and then granting final relief once the State Court has made its determination.

9. If, as the Agreement states, the Receiver has performed her obligations to the extent that the Receivership can be terminated, there is no longer a need for the Receiver's bond.

10. The Receiver therefore requests that the Agreement not be approved until the Receiver's bond is discharged by both this Court and the State Court.

### III. The Debtors' Timetable is Unrealistic, Thereby Creating Uncertainty, and Does Not Provide for a Mechanism to Ensure Payment of All Receivership Expenses

11. By the terms of the Order, the Receiver is bound to perform her duties as receiver until expiration or termination of the receivership. Order, p. 4 ¶ 9.

12. Also by the terms of the Order, the State Court retained jurisdiction over the Receivership. Order, p. 12 ¶ 28.

13. Upon termination of a receivership, the receiver may become personally liable for outstanding debts incurred by the receivership. Generally, receivers are given 30 days or more to wind up a receivership's obligations. Here, the Receiver requires 30 days from termination of the Receivership, at a minimum, to ensure that all outstanding debts of the Receivership are satisfied.

14. Similarly, here the Agreement calls for turnover of all funds with turnover of possession of the real property. The Receiver submits that the usual course is that turnover of assets from a receiver to an owner generally does not occur until such outstanding expenses are paid.[3] Here if turnover were to occur before the Receiver were to satisfy these obligations, the Receiver would be asked to pay for them "out of pocket," contrary to the terms of the Order, which states that "[n]othing in this Order shall require the Receiver to advance funds other than from Income or from other funds made available to the Receiver pursuant to the terms of this Order without a bond or security for payment satisfactory to the Receiver." Order, p. 9, ¶19.

---

[3] The Receiver is mindful that $4.7 million, the proceeds of the sale of six buildings, is being held in escrow.

15. Finally, turnover should not occur until all claims between the Debtors (including any related parties) and the Receiver have been adjudicated, or a proper reserve is set for eventual payment.

16. The Receiver therefore requests that this Court either a) postpone turnover until all fees are paid or determined, or, more practically, b) order a reserve set aside and earmarked for eventual payment (if any).

IV. **The Agreement's Indemnity Agreements Inequitably Subject the Receiver to Liability and Are against Public Policy.**

17. In its current form, the Agreement would allow a situation where the Debtors could object to the Receiver's fees with contractually obligated support of the City. This is both concerning to the Receiver and against public policy.

18. The Agreement states that the Debtors, including the Vaknins, are to indemnify the City against any claims by the Receiver.

19. The Receiver is concerned that this portion of the Agreement is against public policy. The Receiver's three-plus years of work to bring the Receivership Properties up to code resulted in an outcome, as described in the Agreement, that was beneficial for all parties involved. It is only after the Receiver has placed all parties on notice that she reserved the right to advance a fee enhancement (in addition to her pending general unsecured claims). *See* ECF. No. 227 p.4 ¶ J. The Receiver questions why, after she obtained such beneficial results, the City would agree to a Settlement that aligns itself with the Debtors and against the Receiver on her claims? .

20. As applied to the Receiver herself, the indemnity agreement is doubly concerning because there are still matters pending that will involve claims made by the Receiver in both the State and Bankruptcy cases.

### V.    Additional Observations

21.    The Receiver, as an appointee the Court on behalf of the City, would like express the following observations she has with the Agreement, even though they do not affect her directly as a fiduciary:

22.    The Agreement fails to dictate the allotment of the settlement proceeds —nearly $4.7 million dollars —between and amongst the Debtor entities. The Receiver is concerned that, while the Receiver believes she has a claim against all sums plus the property retained by the Debtor, the Agreement allows the Debtors an opportunity to apportion the proceeds in such a way as to shield it from other creditors (including possible judgment creditors). The City is trading its combined $1.9 million judgment for a dilapidated vacant building.  If The City had pursued its substantive consolidations claims against the Debtors that it made earlier in the Case, it would seem that these claims may have been satisfied in full. Indeed, the Debtors are busily reviewing over three and a half years of financial data to recreate separate financials for entities' whose financials were not historically separated.

### CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, the Receiver respectfully requests that the Court enter an order conditioning approval of the Agreement on occurrence of the following conditions:

1. The Release and Discharge of the Receiver by the State Court and by this Court;
2. The Extinguishing of the Receiver's bond by the State Court and by this Court;
3. The Satisfaction of all outstanding Receivership obligations by the Receiver; and
4. The adjudication of all outstanding claims by the Receiver against the Debtor, or the setting aside of a reserve to satisfy such claims; and

5. The Modification of Agreement Section 9 to prevent the Debtor from indemnifying the City against the Receiver insofar as the City is in essence supporting the Debtor/Equity as their agent in opposition to the Receiver, and delegating to the agent the right to hire counsel and speak on its behalf;

The Receiver also requests that the Court set the date of turnover of any property or funds for a date no earlier than the anticipated completion of those conditions.

Respectfully submitted this 13th day of December, 2018.

**Messana, P.A.**
Counsel for the Receiver
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 712-7400
Facsimile: (954) 712-7401
Email: tmessana@messana-law.com

/s/ Thomas M. Messana_____
Florida bar No. 991422
Anthony J. Tamburro
Florida Bar No. 1010144

# Exhibit A

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CITY OF MIAMI,                                         CIRCUIT CIVIL DIVISION

    Plaintiff,                                 CASE NO.:  14-27781 CA 01 (23)

vs.

MIAMI BEVERLY LLC;
1336 NW 60 LLC;
REVEREND LLC;
13300 ALEXANDRIA DRIVE HOLDINGS LLC;
THE HOLDINGS AT CITY LLC;
THE HOLDINGS AT CITY II LLC

    Defendants.
_____/

## ORDER APPOINTING RECEIVER

THIS CAUSE having come before the Court for hearing June 4, 2015 on the Plaintiff's Motion for Appointment of Receiver, and the Court having reviewed the file, heard the testimony, and being otherwise duly advised in the premises, it is hereby:

ORDERED AND ADJUDGED as follows:

1.    The Plaintiff's Motion for Appointment of a Receiver is GRANTED.  It is undisputed that the properties that are the subject of this cause are in serious disrepair and threaten the health, safety and welfare of the community.  Additionally, there are large monetary sums owed to the Plaintiff as a result of outstanding liens due to, among other things, code violations, and the continual accrual of per diem penalties.   A receiver is necessary to properly manage and prevent the continued deterioration of these properties (thereby also protecting the community) and to maximize their income producing potential. These properties require regular, ongoing management and/or maintenance services in order to retain and possibly increase their value,

1

including without limitation retaining existing tenants, attracting new tenants, and completing necessary measures intended to allow full realization of their value, and to correct all code violations.

2.  Linda Leali, Esq., [hereinafter "Receiver"], 777 Brickell Avenue, Ste. 1210, Miami, Florida 33131, is appointed Receiver of the properties commonly described as follows:

   a. 1341 NW 60th Street, Miami, Florida;
   b. 1335 NW 60th Street, Miami, Florida;
   c. 6820 NW 17th Avenue, Miami, Florida;
   d. 1710 NW 1st Court, Miami, Florida;
   e. 1730 NW 1st Court, Miami, Florida;
   f. 1558 NW 1st Avenue, Miami, Florida;
   g. 1231 NW 61st Street, Miami, Florida;
   h. 6040 NW 12th Avenue, Miami, Florida; and
   i. 1250 NW 62nd Street, Miami, Florida.

[hereinafter collectively referred to as the "Property"[1]].

Receiver has agreed to an hourly rate of $300.00 for her services and $125.00 for her administrative staff, and shall be entitled to same for work reasonably and properly performed.

3.  Within two (2) days from the date of this order, Receiver shall post a bond in the amount of $30,000.00, to secure her performance as such, and file her Oath of Receiver wherein she agrees to undertake the faithful performance of her receivership duties and obligations.

4.  Once the bond is posted and the Oath is filed, Receiver shall immediately ensure that the Property is appropriately insured, and shall take immediate possession and control of the Property, together with all improvements thereon, revenues, income, profits, deposits, existing accounts, cash on hand, contracts of purchase and sale, leases, permits, certificates and books and records pertaining to such Property. The Receiver shall act in accordance with and shall have all of the usual, necessary and incidental powers of a receiver afforded by Florida Law,

---

[1] Note: "Property" can also refer to a specific property and not all the properties together, depending on the context.

(subject to limitations set forth in this order) to maintain, operate and preserve the Property including the powers and authority enumerated in this Order.

5. Upon the entry of this Order, Defendants are ordered to cooperate with the Receiver in the transition of the administration and management of the Property and within three (3) days of this Order Date shall disclose and provide copies to the Receiver of all of the following pertaining to the Property (to the extent that such items are in its possession, custody or control):

   a. All keys.
   b. All records pertaining to occupancy including by way of illustration but not limitation, all leases, rent rolls, credit card billings, and cash receipt journals;
   c. Any tenant or occupant ledgers;
   d. The petty cash fund, if any;
   e. A current aged account receivables or delinquency report;
   f. An aged listing of all trade payables and other payables;
   g. A copy of any records relating to operating expenses for the Property;
   h. A list of utilities and utility accounts;
   i. Year-end 2014 operating statement with general ledgers and year-to-date 2015 operating statement with general ledgers;
   j. All on-site employee payroll records and employee files and applications;
   k. An inventory of all equipment, furniture, vehicles, and supplies for the Property;
   l. All existing service contracts;
   m. All franchise, management and/or operating agreements, including all amendments;
   o. All pending bids for contractor work;
   p. The Declaration page of all insurance policies on the Property and their terms, evidence of coverage and contact information for any insurance agent;
   q. All vendor insurance certificates;
   r. Surveys, floor plans and drawings, to the extent Defendants have any;
   s. Documents identifying and summarizing all pending litigation (excluding this action);
   t. All electronic documents, related to the operation of the Property, including but not limited to, all records concerning the profits, finances, issues and operation and management of the Property, accounts with any financial institutions, vendors, suppliers, merchants, and tenants, Defendants' tax identification numbers;
   u. Any permits and approvals;
   v. All tenant security deposits and any other security deposits from any potential buyers;
   w. All listing agreements for the Property;

      x.      All information and documents regarding any remaining warranty items from contractors, sub-contractors, or manufacturers from construction of the buildings on the Property and a list of all contractors and sub-contractors who constructed the buildings on the Property; and

      y.      Such other records pertaining to the management of the Property as may be reasonably determined to be necessary by the Receiver.

6. Defendants and any third parties receiving notice of this Order shall also surrender to the Receiver and account for all monies that they currently or may later possess (and/or that is or becomes subject to their control) from revenue, profits, rents and/or income collected from the operation of the Property, including any money held in accounts maintained by Defendants at any financial institution related to the Property.

7. Defendants and its property managers, affiliates, operators, employees, and agents are prohibited from removing any personal property belonging to the Property or diverting any Property income or rents.

8. Defendants shall fully cooperate with the Receiver in adding the Receiver as additional insured and the Receiver as a loss payee on all insurance relating to the operation and management of the Property including, but not limited to, fire, extended coverage, property damage, liability, fidelity, errors and omissions, and workers' compensation, automobile liability and umbrella liability coverage related to the Property. Defendants and their property managers, employees, and agents are prohibited from cancelling, reducing, or modifying any and all insurance coverage in existence with respect to the Property. In the alternative, the Receiver may, in her reasonable discretion replace the insurance relating to the operation and management of the Property.

9. Immediately upon the posting of the bond and the filing of her Oath, and continuing until expiration or termination of the receivership, the Receiver shall perform all of the following that

from time to time applies and/or is necessary to preserve and protect the Property and community, and is vested with the authority, powers and duties delineated below:

    a. To maintain, secure, manage, operate, repair, and preserve the Property;
    b. To change any and all locks to the Property (if deemed appropriate by Receiver) and, if appropriate, limit access to some or all of the Property;
    c. To assume control over the Property and to collect and receive all Income from the Property;
    d. To prepare and maintain complete books, records, and financial reports of the Property, including, but not limited to, operating statements, income statements, balance statements, and all other statements prepared for the Property in a form acceptable to the Court;
    e. To hire, or discharge, on-site employees or independent contractors without any liability to the Parties;
    f. To establish pay rates for any on-site employees;
    g. To review existing workers' compensation, disability, general liability and "all risks" hazard insurance and to purchase such insurance, including automobile liability coverage and umbrella coverage, in an amount determined appropriate by the Receiver to protect the Property, and name the Plaintiff, the Receiver, any Property manager and Defendants as additional insureds, as the Receiver deems appropriate for the Property's preservation and protection;
    h. To maintain a separate account with a federally insured banking institution or a savings association with offices in the State of Florida in the name of the Receiver, from which the Receiver shall disburse all authorized payments as provided in this Order;
    i. To receive and endorse checks pertaining to the Property either in the Receiver's name or Defendants' name;
    j. To pay all appropriate real estate taxes, personal Property taxes, sales or use taxes, any other taxes or assessments against the Property under Defendants' tax identification number;
    k. To prepare and file any tax returns stemming from the Property and the operation of the Property as may be required by law (including gross receipts, sales and use or other tax returns). The Receiver shall not be responsible for the preparation and filing of any income tax returns for the Defendants, but shall, within thirty (30) days of receipt of a written request to do so, provide Defendants with information relating to the operation of the Property arising from and after the date of her appointment as Receiver in order to permit Defendants to file its/their income tax returns. Defendants shall provide to the Receiver any information needed to file any tax returns for the Property;
    l. To contest, protest, or appeal any ad valorem tax or assessment, real estate tax, personal Property tax, or other tax or assessment pertaining to the Property, should she deem it appropriate. Any refund or reimbursement of taxes whether paid by the Receiver or Defendants shall be deemed Income;
    m. To operate the Property under any existing name or trade name (or new name, if the Receiver deems appropriate to do so);

n.  To open and review mail directed to Defendants and their representatives pertaining to the Property;
o.  To seek assistance of law enforcement officials as necessary to preserve the peace and protect the Property;
p.  To continue, manage, operate, lease, market, and negotiate, modify, cancel, or enter into listing agreements and contracts to lease the Property;
q.  To enforce, amend, terminate any existing contract(s) not required for the operation of the Property;
r.  To reject any unexpired contract(s) entered into by Defendants, and/or its authorized agent, that are not required for the operation of the Property;
s.  To execute, cancel, modify, renegotiate, or abrogate all service, maintenance or other contracts relating to the operation of the Property;
t.  To make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property;
u.  To maintain appropriate insurance, continue any current policies in place, and purchase further insurance as the Receiver deems appropriate, as defined below, and shall name the Plaintiff, any property manager and Defendants, as additional insureds, and Plaintiff as loss payee;
v.  To enter into leases and do all things necessary to continue normal property operation;
w.  To modify existing contracts in the ordinary course of the business of the Property;
x.  To pay all utilities, expenses and other obligations secured by, or which may give rise to liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including, obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership;
y.  To make repairs necessary for the maintenance of the Property, in order to preserve the Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs and/or remediations having a cost of $2,500.00 or more on any given individual rental unit without first obtaining approval from the Court;
z.  In the event the cost of improvements, repairs and/or remediations to individual rental units cost $2,500 or more, to engage contractors and skilled trades on a competitive bid basis, and to execute such contracts for such purposes as the Receiver deems appropriate, but ***must first seek court approval***;
aa. To borrow funds for purposes relating to the operation of the Property. However, the Receiver shall not borrow funds without first providing the Plaintiff and Defendants with advance written notice and a reasonable opportunity to elect to advance funds required by the Receiver, and ***must first seek court approval***;
bb. To take all steps necessary to comply with all requirements, regulations and laws applicable to the Property, and to deal with all regulatory authorities in connection with the same;

    cc. To employ, if necessary, bookkeeping, accounting, legal and clerical services deemed necessary for the proper management of the Property, but ***must first seek court approval*** and justify the work required and the charges/fees/wages incurred as a result;

    dd. To employ a manager or managing company to perform the planning, scheduling and supervising of all on-site services as directed by the Receiver, including but not limited to, managing tenant rosters, on-site collection of rents, coordinating any and all inspections and repairs, scheduling and supervising the activities of all other on-site vendors, managing and coordinating communications with the Receiver and other pertinent parties, and any other pertinent on-site services requested by the Receiver, but ***must first seek court approval for rates and fees charged for specific services***; and

    ee. To institute, prosecute, defend, compromise, and/or intervene in, or become a party to, such actions or proceedings in state or federal courts which may, in the Receiver's opinion, be necessary for the protection, maintenance and preservation of the Property, for the carrying out of the terms of any order of the Court affecting the Property, to collect rents and other amounts now or hereafter becoming due, to evict and/or remove tenants or other persons or entities from the Property, and/or to defend against any action brought against the Receiver acting in such capacity. This also applies to administrative proceedings, arbitrations, or other proceedings that involve the Property.

10. Notwithstanding the foregoing, the Receiver and the Receivership estate shall not be liable for the payment of taxes of any kind, assessments, goods, or services provided to Defendants or the Property or utility charges prior to the date of this Order.

11. Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Property based upon the non-payment of such taxes, assessments, goods or services or utilities prior to the date of this Order and from attempting to collect taxes, assessments, invoices, and utility charges from Receiver predating the date of this Order. Each utility company or entity providing service to the Property shall forthwith transfer any deposits which it holds to the exclusive control of the Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure such service.

12. The Receiver is directed to prepare and file within thirty (30) days of the date of this Order and on the tenth day of each month thereafter, so long as the Receivership is in force, a

report as is required by Fla.R.Civ.Pr. 1.620, under oath, setting forth and reporting all changes in assets in her charge or claims against the assets that have occurred during the preceding month. [The first report due July 10, 2015, shall be for the period ending June 30, 2015].  The Receiver shall file such reports with the Clerk of this Court and shall serve a copy of each report upon counsel for Plaintiff, the Defendants, and the Court.  The Report must clearly and separately account for the different properties within the Property.

13.    Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available and shall be subject to all the duties of a Receiver under the laws of the State of Florida that may be incidental to the management and operation of the Property, as described in this Order.  The Receiver shall have any additional powers that are provided by law and that the Court may from time to time direct or confirm.

14.    The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

15.    The authority granted to the Receiver is self-executing, unless the action requires approval.  The Receiver is authorized to act on behalf of and in Defendants' name (or the Receiver's name), as the Receiver deems appropriate without further order of this Court and without personal recourse against the Receiver (subject to the general provisions, below).

16.    In the event that the revenue from the Property is not sufficient to pay the expenses of the preservation, operation, maintenance or restoration of the Property in accordance with the terms of this Order, and to pay the Receiver, Plaintiff is hereby specifically authorized to advance, at Plaintiff's sole discretion, said sums to the Receiver as are necessary for the payment of same, and the Receiver may issue Receiver Certificates upon terms, including interest rate, approved by order of the Court, to reflect and secure said advancements.

17. All advances to the Receiver by Plaintiff for the benefit of the Property excluding fees and costs of the Receiver, but including any advances for working capital or improvements shall be deemed protective advances. Any such protective advance shall be fully secured by a first priority mortgage lien and security interest against the Property. All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Property (except for taxes and assessments having first priority as a matter of law) or proceeds of either of them.

18. Each month the Receiver, her attorneys, accountants and bookkeepers, shall be authorized to receive compensation for the time they have devoted to this Receivership. The Receiver shall submit to the parties an account of the fees and other charges incurred and revenues received. The parties shall have ten (10) days thereafter to file any objection to the compensation requested. If no objections are filed, the Receiver is authorized to make payment to herself, and her attorneys, accountants and bookkeepers for the services for the applicable period from any source received by the Receiver as assets of this Receivership without further order of this Court. Any timely objection shall be brought on for an expedited hearing for a resolution by this Court. The Receiver's fees and expenses incurred by the Receiver in the proper performance of her duties hereunder, shall be paid to the extent funds are available, first from the revenues derived from the operation or liquidation of the Property, and if these are not sufficient, then from the proceeds of receiver certificates, as set forth above.

19. Nothing in this Order shall require the Receiver to advance funds other than from Income or from other funds made available to the Receiver pursuant to the terms of this Order without a bond or security for payment satisfactory to the Receiver.

20. The Receiver shall not be liable for any claim, obligation, liability, action, cause of action, cost or expense of Defendants or the Property arising out of or relating to events or

circumstances occurring prior to the entry of this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of Defendants and any liability to which Defendants are currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Property (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). The Receiver shall not be obligated to advance any funds to pay any Pre-Receivership Liabilities.

21. The Receiver and the Receiver's attorneys and agents: (i) may rely on any and all outstanding court orders, judgments, decrees and rules of law, and shall not be liable to anyone for their own good faith compliance with any such order, judgment, or decree or rule of law; (ii) may rely on, and shall be protected in any action upon, any resolution, certificate, statement, opinion, report, notice, consent, or other document believed by them to be genuine and to have been signed or presented by the proper parties; (iii) shall not be liable to anyone for their good faith compliance with their duties and responsibilities as receiver, or as attorney or agent for the Receiver; and (iv) shall not be liable to anyone for their acts or omissions, except upon a finding by this Court that such acts or omissions were outside the scope of their duties or were grossly negligent. Except for matters set forth in subsection (iv), persons dealing with the Receiver shall only look to the Receivership assets to satisfy any liability, and neither the Receiver nor her attorneys or agents shall have any personal liability to satisfy any such obligation.

22. No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting a suit or action provided, however, that no prior Court order is required to file a motion in this action arising from the Receiver's gross negligence, gross or willful misconduct, malicious acts, and/or the failure to comply with this Order or any other order of this Court in this action.

23. The Receiver and her employees, agents and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Defendants' creditors because of her duties as Receiver.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Florida law.

24. The Receiver and her employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, and/or the failure to comply with this Court's orders.

25. Defendants, all Property managers of Defendants and all those in active participation or concert with them who receive notice of this Order, and all those having claims against the Property, who receive notice of this Order, are enjoined from and shall not:

>  a. Commit Waste.  Commit or permit any waste on all or any part of the Property, or suffer, commit or permit any act on all or any part of the Property in violation of the law, or remove, transfer, encumber, or otherwise dispose of any of the Property.
>  b. Collect Income.  Demand, collect, receive, discount, or in any other way divert or use any of the Income.
>  c. Terminate Any Utility Service.  Terminate or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Property, require any utility deposit or otherwise interfere with the continued operations of the Property.
>  d. Interfere with the Receiver.  Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation or management of the Property.
>  e. Transfer (without Court approval) or Encumber (other than to refinance) the Property.  Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage (except to refinance), create a security interest in, encumber (except to refinance), conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Property including, but not limited to, the Income without prior court order.
>  f. Impair the Preservation of the Property.  Do any act which will, or which will tend to impair, defeat, divert, prevent, or prejudice the preservation of the Property, including the Income, or the preservation of Plaintiff's interests in the Property and the Income.

26. The Receiver shall faithfully perform and discharge the Receiver's duties in accordance with this order.

27. The Court finds there is no just reason for delay and therefore enters this Order as a final order.

28. The Court shall retain jurisdiction over this action, the Property, and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order and substantial justice.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 06/10/15.

BARBARA ARECES
CIRCUIT COURT JUDGE

**No Further Judicial Action Required on THIS MOTION**
**CLERK TO RECLOSE CASE IF POST JUDGMENT**

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.