*Tagged Opinion*



**ORDERED in the Southern District of Florida on October 16, 2019.**

Laurel M. Isicoff
Chief United States Bankruptcy Judge
_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Cases |
| | |
| MIAMI BEVERLY, LLC, | Case No. 18-14506-LMI (Lead Case) |
| 1336 NW 60, LLC, | Case No. 18-14509-LMI |
| REVEREND, LLC | Case No. 18-14510-LMI |
| 13300 ALEXANDRIA DR. HOLDINGS, LLC | Case No. 18-14511-LMI |
| THE HOLDINGS AT CITY, LLC | Case No. 18-14512-LMI |
| | Jointly Administered |
| Debtors, | |
| _____/ | |

## ORDER GRANTING MOTION TO STRIKE CHARGING LIEN

This matter came before the Court on August 7, 2019 (the "Hearing") on *Motion to Strike* (ECF #430) filed by Creditor/Interested Party, Miami Development & Holdings, LLC (the "Motion to Strike") the *Verified Notice and Claim of Attorneys' Charging Lien* (ECF #291, Re-docketed ECF #295) (the

1

"Charging Lien") filed by Irons Law Group ("Irons"). The Court has considered the Motion to Strike, Irons' *Response* (ECF #439) and *Amended Response* (ECF #442) (collectively the "Response"), and the arguments of counsel. Based on the foregoing, the Court determines as follows:

I. **BACKGROUND**[1]

Gadi Shushan ("Shushan") executed a contingency fee retainer agreement dated March 7, 2018, (the "Contingency Fee Agreement") with Irons. (ECF #291, Re-docketed ECF #295, pages 4-7). The opening paragraph of the Contingency Fee Agreement describes the following services as being covered by the Irons' representation

> obtaining some form of recovery or benefit stemming from the agreement written between Gadi Shushan and Abe Vaknin…. may be achieved through (i) resolving the contract dispute with Abe Vaknin and/or litigating your claim against 13300 Alexandria Dr. Holdings, LLC, et al. and/or (ii) negotiating a settlement with the City of Miami and/or making an appearance in the CITY OF MIAMI VS MIAMI BEVERLY LLC case and/or, (iii) negotiating with potential buyers, or (iv) through other means.

The Contingency Fee Agreement contains the following additional provisions pertinent to the Charging Lien:

> 2) FEE ARRANGEMENT.  Legal fees shall be billed as follows:
>
> … b. For any recovery obtained on or after April 7, 2018, **Fifty Percent (50%) of the accumulative amount of any recovery**.
>
> For clarity, the term recovery also includes any form of benefit, whether in cash, cash equivalent, real property, personal property, a membership interest, a right to purchase real property or purchase a membership interest, or otherwise, conferred upon Client…
>
> 9) TERMINATION OF AGREEMENT.  You may terminate this

---

[1] The facts set forth herein are not disputed by the parties.

2

agreement upon written notice to the undersigned at any time. Similarly, Irons Law Group may also terminate this agreement… **Any termination of our representation will not effect [sic] your obligation to pay for the services and costs previously rendered**. In the event Client terminates this agreement, or terminates the Firm from collecting on any given judgment account for any reason, **the Firm shall be entitled to the agreed upon contingency fee as if the Firm had collected the full amount of the claim**….

…

[11-]1) RETAINING AND CHARGING LIEN.  If you retain a new attorney to conclude this matter, **you would be required to *immediately* pay this firm for all of the attorney's fees and costs that it incurred**, ***and*** if a new attorney successfully obtains a recovery on the judgment, the **percentage of the recovery owed to the Firm per Section 2 of this Agreement will continue to be owed to the Firm as if the Firm had collected the full amount of the claim**…

(emphasis added).

On March 26, 2018, Irons filed a notice of appearance on behalf of Shushan in the state court litigation styled *Shushan v. 13300 Alexandria Dr Holdings, LLC, et al.,* in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 15-020526-CA-01 (the "State Court Action").  (ECF #430, ¶ 4, ECF #442, ¶20). A review of the docket in the State Court Action reflects that Irons' actions were limited to filing a complaint and nine *lis pendens* on April 3, 2018, attending a status conference on June 14, 2018, and filing a Motion to Withdraw as Counsel of Record on June 6, 2019. The docket does not reflect any work performed by Irons after it filed the complaint and *lis pendens* documents.[2]

---

[2] At the Hearing, Mr. Irons described all manner of work he did relating to trying to find investors, put together sale opportunities, and various other business resolutions.

On April 17, 2018, Miami Beverly, LLC, 1336 NW 60, LLC, THE HOLDINGS AT CITY, LLC, 13300 ALEXANDRIA DR. HOLDINGS, LLC, and REVEREND, LLC, (collectively the "Debtors") filed Chapter 11 bankruptcy petitions.[3] The Court entered an *Order Granting Motion for Joint Administration of Cases* (ECF #6) on April 23, 2018 under the lead case of Miami Beverly, LLC (the "Bankruptcy Case").

On July 31, 2018, Irons filed proof of claim no. 2 (the "Claim") in the Bankruptcy Case on behalf of Shushan; the Claim is the first and only record activity of Irons in this Bankruptcy Case other than its pursuit of the Charging Lien. Though Irons did not receive a termination letter until November 2018, Eric Irons, the principal of Irons, conceded that Irons' work with Shushan lasted only from March 2018-July 2018 and that the firm did not perform any work after filing the Claim on July 31, 2018. Indeed, Mr. Irons does not dispute that Shushan did not return his phone calls after Irons filed the Claim. In fact, Shushan assigned his Claim on July 31, 2019, to Miami Development & Holdings, LLC ("MDH"), an entity in which Shushan has an interest, and on August 1, 2018, Hoffman, Larin & Agnetti, P.A. ("HLA") filed its *Notice of Appearance* (ECF #106) on behalf of MDH.

On September 13, 2018, HLA filed a *Transfer of Claim Other than for Security* (ECF #136) (the "Transfer"), providing notice of the transfer of the Claim from Shushan to MDH. Attached to the Transfer was an Assignment of Claim

---

[3] Case Numbers 18-14506-BKC-LMI, 18-14509-BKC-LMI, 18-14512-BKC-LMI, 18-14511-BKC-LMI, and 18-14510-BKC-RAM, respectively. All cases were transferred to Judge Isicoff.

Agreement, evidencing the transfer of all of Shushan's interest in the Claim and its underlying dispute to MDH.

Both the Debtors and their equity security holders objected to the Claim. (ECF ##130, 135, 170). HLA represented MDH in the claim objection litigation, filed a *Response to the Claim Objection* (ECF #233) and attended mediation of the issue. *See Report of Mediation* (ECF #321).

The Debtors, the equity security holders and MDH ultimately resolved the Objection to Claim through a settlement (the "Settlement") announced at the April 5, 2019 confirmation hearing of the Debtors' Chapter 11 plan. The Confirmation Order entered by the Court on April 9, 2019 (ECF #382) reflects the Settlement. Pursuant to the Settlement, MDH received a distribution from the bankruptcy estate of $225,000.00 (the "Distribution").

On February 14, 2019, more than six months after it finished representing Shushan, Irons filed its *Verified Notice and Claim of Attorney's Charging Lien* in the Bankruptcy Case (ECF#291) (the "Charging Lien"). MDH filed the Motion to Strike on July 3, 2019.

On June 6, 2019, Irons filed its *Motion to Withdraw as Counsel of Record* in the State Court Action. The State Court never ruled on that motion.

On June 13, 2019, the parties to the State Court Action filed a *Joint Stipulation of Dismissal with Prejudice* and, on the same day, the state court entered an *Agreed Order of Dismissal with Prejudice.* Neither the Joint Stipulation nor the Agreed Order reserved jurisdiction to adjudicate further claims.

Irons did not seek to impose a charging lien in the State Court Action before its dismissal.

Pursuant to the Contingency Fee Agreement, Irons seeks 50% of the Distribution from the bankruptcy estate or $112,500.00. By agreement of the parties, HLA is holding $112,500.00 in its trust account pending a ruling by the Court on the Motion to Strike.

Both Irons and HLA have requested attorneys' fees for the work related to this fee dispute. The Contingency Fee Agreement contained a provision entitling the prevailing party in any fee dispute to reimbursement of their attorneys' fees and costs.  (ECF #291, Re-docketed ECF #295, p. 6).

In order to resolve this dispute, the Court must determine first, whether Irons is entitled to assert a charging lien at all, and, assuming Irons is entitled to file any charging lien, then, second, whether this Court has jurisdiction to consider payment of fees for the legal work performed on behalf of Shushan in the State Court Action.

## II.    CONCLUSIONS OF LAW

### A. Standard for Imposing a Charging Lien.

Charging liens are a creation of state law and thus the Court looks to Florida law to resolve these issues. To impose a charging lien, an attorney must establish four required elements: (1) an express or implied contract between attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice. *Daniel Mones, P.A. v. Smith*, 486

So.2d 559, 561 (Fla. 1986) (*citing Sinclair, Louis Siegel, Health, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So.2d 1383 (Fla. 1983)). "Under Florida law, the necessary elements for a charging lien fall into two stages: creation and perfection." *In re MacNeal*, 393 B.R. 805, 811 (Bankr.S.D.Fla. 2008).

### B. There is no Charging Lien because Irons does not have an enforceable fee agreement.

### 1. The Contingency Fee is Excessive.

The Charging Lien is based on Irons' claim to fees pursuant to the Contingency Fee Agreement. However the fees claimed are excessive and, therefore, disqualifying.

Rule 4-1.5(a) of the Rules Regulating The Florida Bar (the "Ethics Rules") states that "A lawyer must not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar." Rule 4-1.5(f)(4)(B)(i) sets out the acceptable contingency fee schedule approved by The Florida Bar. The highest contingency fee schedule[4] provided for by the Ethics Rules caps attorneys' fees <u>without prior court approval</u> at 40% of any recovery up to $1 million; 30% of any portion of the recovery between $1 million and $2 million; plus 20% of any portion of the recovery exceeding $2 million. *Id.* If the fee is excessive the agreement is not enforceable. *See Chandris S.A. v. Yanakakis*, 668

---

[4] The highest fee schedule applies in cases "[a]fter the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment". Rule 4-1.5(f)(4)(B)(i)(b).

7

So.2d 180, 185-86 (Fla.1995) ("[W]e hold that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable. We have determined that the requirements for contingent fee contracts are necessary to protect the public interest. Thus, a contract that fails to adhere to these requirements is against public policy and is not enforceable by the member of the Florida Bar who has violated the rule.")

The Contingency Fee Agreement provides that "[f]or any recovery obtained on or after April 7, 2018, [Irons shall be paid] Fifty Percent (50%) of the accumulative amount of any recovery." Contingency Fee Agreement, p. 1, ¶ 2(A)(b). Fifty percent far exceeds any of the fee caps allowed by the Ethics Rules and it is undisputed that no court approved the 50% fee, so the Contingency Fee Agreement is presumed to be excessive.

Irons argues that it has rebutted the presumption that the Contingency Fee Agreement is excessive. Irons contends that the difficulty and lack of desirability of Shushan's case, as evidenced by Shushan's inability to hire a lawyer for nearly three years, is adequate to rebut the presumption. However, even assuming this would be a basis to allow a fee in excess of the guidelines, Irons failed to seek prior court approval of the Contingency Fee Agreement. Moreover, the contingency fee is tied to an arbitrary date rather than to the stage in which certain litigation is positioned, as contemplated the by the Ethics Rules. *See supra*, n. 4. Irons could not articulate any reason why the amount of fees sought by the Contingency Fee Agreement were appropriate. Irons has failed to

8

rebut the presumption.

Accordingly, the Contingency Fee Agreement is clearly excessive pursuant to Rule 4.1-5(a). Because the Contingency Fee Agreement is clearly excessive, it is not enforceable and therefore, there is no contract and the first element for a charging lien is not satisfied.

### 2. The Termination of Agreement Clause and Penalty Provisions Violate the Rules Regulating The Florida Bar and make the Contingency Fee Agreement Void *Ab Initio*.

The Contingency Fee Agreement contains termination of agreement and penalty provisions (collectively the "Provisions"), which state:

> 9) TERMINATION OF AGREEMENT. …. Any termination of our representation will not effect [sic] your obligation to pay for the <u>services and costs previously rendered</u>.  In the event Client terminates this agreement, or terminates the Firm from collecting on any given judgment account for any reason, the <u>Firm shall be entitled to the agreed upon contingency fee as if the Firm had collected the full amount of the claim</u>….

> [11-]1) RETAINING AND CHARGING LIEN.  If you retain a new attorney to conclude this matter, <u>you would be required to **immediately** pay this firm for all of the attorney's fees and costs that it incurred</u>, **and** <u>if a new attorney successfully obtains a recovery on the judgment, the percentage of the recovery owed to the Firm per Section 2 of this Agreement will continue to be owed to the Firm as if the Firm had collected the full amount of the claim</u>…

(emphasis added).

The Provisions would require Shushan to furnish payment to Irons prior to the occurrence of the contingency event in addition to allowing Irons to receive the contingency fee if Shushan went on to hire new counsel who successfully recovered for Shushan. This is double recovery. The Provisions provide for both

9

*quantum meruit* and contingent percentage fees for the <u>same work</u> which violates Rule 4-1.5(a) of the Ethics Rules because it would result in a "clearly excessive fee". These Provisions constitute ethical violations which nullify the Contingency Agreement *ab initio.*

Moreover, requiring payment of a contingency fee based on full recovery, to a prior attorney restricts a client's ability to retain new counsel. The Florida Supreme Court has held that "…there is an overriding need to allow clients freedom to substitute attorneys without economic penalty as a means of accomplishing the broad objective of fostering public confidence in the legal profession. Failure to limit *quantum meruit* recovery defeats the policy against penalizing the client for exercising his right to discharge." *The Florida Bar v. Doe,* 550 So.2d 111, 1112-1113 (Fla. 1989). "A termination-of-services clause in a contingency-fee agreement, which provides for the client to pay the discharged law firm for all services rendered up through the date of termination at the prevailing hourly rate for the firm members, if the client abandons or dismisses the claim, violates rule 4-1.5 [of the Rules Regulating The Florida Bar] on its face." *Rubin v. Guettler*, 73 So.3d 809, 813 (Fla. 4th DCA 2011) (citing *The Fla. Bar v. Hollander*, 607 So.2d 412, 414 (Fla. 1992)). Such a discharge provision goes to the very essence of the fee agreement and renders it unenforceable from its inception. *Id.* at 814. *See also The Fla. Bar v. Spann,* 682 So.2d 1070, 1072-1073 (Fla. 1996) (finding that a contingency fee agreement that required payment upon termination by the client constituted a penalty clause in violation of rule 4-1.5(a) because the client would be forced to pay the attorney even if the

contingency event had not occurred). "Any contingency fee contract which permits the attorney to withdraw from representation without fault on part of the client or other just reason, and purports to allow the attorney to collect a fee for services already rendered would be unenforceable and unethical." *Hollander*, 607 So.2d 412, 415 (Fla. 1992)). Further, Irons' post-termination claim for contingency fees is not permissible and its claim, at best, is that of *quantum meruit*. *See also Rosenberg v. Levin,* 409 So.2d 1016 (Fla. 1982) (an attorney discharged by a client without cause could only pursue a fee on the basis of *quantum meruit* after the former client recovered damages).

The Court finds that the Contingency Fee Agreement is contrary to the Ethics Rules. The language of the Contingency Fee Agreement that requires full payment of the contingency fee AND quantum meruit compensation is virtually identical to the provisions the Florida Supreme Court has struck. Thus, the Contingency Fee Agreement was void *ab initio,* and therefore the Charging Lien is invalid.

**C. Irons failed to perfect a Charging Lien.**

Even had the Court had found that Irons had a valid fee agreement for which it could seek a charging lien, Irons' claim for the Charging Lien still falls short of the requirements under established Florida law. "There are no requirements for perfecting a charging lien beyond timely notice." *Sinclair*, 428 So.2d at 1385. "In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the *original action*." *Daniel Mones, P.A.,* 486 So.2d at 561. (emphasis added).

Irons failed to notice or otherwise pursue the Charging Lien in the State

11

Court Action, which is the "original action". Instead, Irons filed a notice of the Charging Lien in the Bankruptcy Case, a wholly different proceeding - one in which Irons did not even make an appearance. "In Florida, as elsewhere, the charging lien is an equitable right to have the costs and fees due him for [his] services… in that particular suit… No lien may therefore arise where there have been no proceeds recovered in the suit as to which the services are claimed. The value therefore of services rendered in one suit cannot be included in a judgment establishing the lien of an attorney for his fees on property recovered by his client in a different suit." *Chancey v. Bauer,* 97 F.2d 293, 294 (1938). *See also Daniel Mones, P.A.,* 486 So.2d at 563 ("Except where the charging lien is established in the proceeding in which the services were rendered, an attorney is no more entitled to have a lien impressed summarily by decree of a court of equity than is any other kind of laborer." *Brass v. Reed,* 64 So.2d 646, 648 (Fla.1953)) (citation omitted); *and see Bruton v. Carnival Corp,* 916 F.Supp.2d 1262, 1268 (S.D.Fla 2012) (Fees and charges incurred outside of a suit are not, absent special circumstances, covered by a charging lien.").

At the Hearing, Mr. Irons argued that the Bankruptcy Case is essentially a continuance of the State Court Action, and, consequently, this Bankruptcy Case constitutes the "original action". The Court disagrees. The State Court Action had multiple defendants who were not debtors in the Bankruptcy Case and therefore unrelated to the Claim. Moreover, except for the filing of the Claim on July 31, 2018 and later pursuing the Charging Lien, Mr. Irons never appeared as counsel or filed any pleadings in the Bankruptcy Case. Indeed, Mr. Irons did not even receive electronic service of any pleadings in the Bankruptcy Case, as evidenced by the service receipts of Electronic Court Filing system.

12

Irons cites to *Len-Hal Realty, Inc. v. Wintter & Cummings,* 689 So. 2d 1191, 1191 (Fla. 4th DCA. 1997) in support of its position that either the State Court Action or the Bankruptcy Case were equally proper forums as the "original action" with respect to noticing its former client of the Charging Lien. The Court finds that *Len-Hal* is distinguishable from this situation because the *Len-Hal* court found that "that work was directly related to obtaining the property on which the lien is imposed." *Id.* Here, there was simply no correlation between the work that Irons did in the State Court Action, which was virtually nothing, and the Settlement and the Distribution flowing therefrom; the Distribution received by MDH resulted from a case in which Irons was not involved and from work performed by a different law firm, not Irons.

Irons also cites to the *Deutsch v. Denes (In re Deutsch),* 2016 WL 932810 (S.D.Fla. 2016) for the proposition that proper notice does not need to be made in a public way to put the entire world on notice of a charging lien, and thus notice in the Bankruptcy Case was adequate. The *Deutsch* court found adequate notice in the form of a letter sent by a former lawyer to his former client to assert a charging lien on a payment stream that the former client received for disability benefits. The Court finds the facts and issue in *Deutsch* are distinguishable. The *Deutsch* charging lien emanated from a payment stream of disability benefits won in a prior action which was wholly concluded. The *Deutsch* fee dispute did not arise until after the former client received a subsequent bankruptcy discharge and sought to cut off that payment stream to its former counsel. *Deutsch* is not applicable here.

Irons rendered its services in the State Court Action and did nothing more than file a Claim in the Bankruptcy Case. The State Court Action was the original

13

action and thus the proper forum in which Irons needed to assert its Charging Lien for his "work" relating to the State Court Action. Accordingly, Irons' noticing of the Charging Lien in the Bankruptcy Case for any claim arising for his work in the State Court Action was deficient.

### D. Irons Provided No Benefit in the Bankruptcy Case.

Lastly, Irons takes the position that "[a]ll the amounts [Shushan] and/or MHD [sic] have received in this action were fruits of the labor of [Irons], as the entire claim was predicated on [Irons'] timely claim in the bankruptcy." *Amended Response*, ECF #442, ¶ 86. Florida courts require proof of positive results from the underlying litigation because a charging lien only attaches to the "tangible fruits of the services" provided to the client. *Walia v. Hodgson Russ LLP,* 28 So.3d 987, 989 (Fla. 4th DCA 2010).

Irons seeks a Charging Lien against the proceeds of a settlement in which Irons did not participate in any way. Irons represented Shushan for less than five months and the firm's only work in the Bankruptcy Case consisted of filing the Claim. Shushan terminated Irons' representation more than six months before any settlement discussions even began. The filing of the Claim, while necessary to protect Shushan's interest in the Bankruptcy Case, does not equate to the intensive work that subsequent counsel for MDH spent litigating and negotiating with the Debtors that resulted in the Settlement. The Claim, even assuming it had anything to do with the Settlement (remember, the ultimate dispute regarding ownership was between two non-debtor parties), was not sufficient to give rise to any claims for renumeration sufficient to support the Charging Lien. Thus, any quantum meruit calculation would be de minimis, and

14

that is not what Irons seeks.

The Court finds that Irons' work did not have any demonstrable benefit on the Settlement between MDH and the Debtors. Even if the Court had found that Irons had a valid charging lien, which it does not, that lien could not attach to the Distribution because the Settlement proceeds are not the fruits of Irons' labor.

### ORDER

For the foregoing reasons, it is ordered as follows:

1. The Motion to Strike is granted and the Charging Lien is hereby dissolved.

2. HLA is authorized to disburse the $112,500.00 being held in its trust account free and clear of any claims from Irons.

3. The Court reserves jurisdiction to enter an award attorneys' fees and costs to counsel for MDH.

4. HLA is directed to do a Notice of Filing within 14 days of the entry of this Order of the attorneys' fees it incurred with respect to the Motion to Strike, and related filings and court appearances. Irons shall have 7 days to object to HLA's fees. If any objection is filed, the Court will rule on the objection without hearing.

### ###

Copies provided to:
Michael Hoffman, Esq.

*Attorney Hoffman shall serve a copy of the signed order on all interested parties file a certificate of service.*